*Baltimore XV Properties LLC v. Newsteps' Choice North Homeowners Association, Inc., et al.*, No. 24, September Term, 2025. Opinion by Biran, J.

**MARYLAND RULES – SHERIFF'S SALES – POST-SALE EXCEPTIONS – SATISFACTION OF THE JUDGMENT –** The Supreme Court of Maryland held that a judgment-debtor's post-sale satisfaction of the judgment cannot be raised as an exception to a sheriff's sale under Maryland Rule 14-305(e)(1). Post-sale satisfaction of the judgment is not an irregularity with respect to the sale. A judgment-debtor has several ways to obtain release of a levy pre-sale, including by satisfying the judgment. Once the sale occurs, those options are no longer available. A sheriff's sale purchaser obtains an inchoate equitable interest in the subject property. As a result, the purchaser has the right to the ratification process set forth in the Maryland Rules. Allowing a judgment-debtor's post-sale satisfaction of the judgment to void a sheriff's sale would violate that right.

IN THE SUPREME COURT

OF MARYLAND

No. 24

September Term, 2025

---

BALTIMORE XV PROPERTIES LLC

v.

NEWSTEPS' CHOICE NORTH
HOMEOWNERS ASSOCIATION, INC., ET AL.

---

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

---

Opinion by Biran, J.
Fader, C.J., and Booth and Gould, JJ., concur.
Watts, Eaves, and Killough, JJ., dissent.

---

Filed: July 14, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

After a plaintiff obtains a judgment against a defendant in a lawsuit, the plaintiff becomes a judgment-creditor and the defendant becomes a judgment-debtor. Under Maryland law, a judgment-creditor can place a levy on a judgment-debtor's interest in real or personal property in order to satisfy a money judgment. The judgment-debtor has several ways to obtain release of levied property before the sheriff sells the property at a public auction. One option is for the judgment-debtor to satisfy the judgment, e.g., by making a cash payment to the judgment-creditor. The judgment-creditor can force the sale of any property that remains under levy once the required amount of time passes. After the sheriff sells the property to the highest bidder at auction, interested parties may file exceptions alleging irregularities in the sale. If no exceptions are filed or if the court overrules the exceptions, and the court is satisfied that the sale was fairly and properly made, the court ratifies the sale. After ratification, the sheriff conveys the judgment-debtor's interest in the property to the purchaser, and the sale proceeds are distributed accordingly.

In this case, Respondent Newsteps' Choice North Homeowners Association, Inc. (the "HOA") obtained a judgment (the "Judgment") in the District Court of Maryland sitting in Prince George's County against Respondent Wendy Carrington. The HOA placed a levy on Ms. Carrington's interest in her home in the Northridge/Newsteps' Choice North community in Bowie, Maryland (the "Property"). Ms. Carrington did not satisfy the Judgment or otherwise obtain release of the levy on the Property before the Prince George's County Sheriff's Office (the "Sheriff") conducted a public auction. The winning bidder at the auction was Petitioner Baltimore XV Properties LLC ("Baltimore XV"). After the sale, but before ratification, Ms. Carrington satisfied the Judgment by providing the necessary

funds to the HOA. The HOA notified the District Court that Ms. Carrington had satisfied the Judgment and requested that the court vacate the sale. Baltimore XV objected. The District Court decided that it was proper to vacate the sale because Ms. Carrington satisfied the Judgment before the sale was ratified. On appeal, the Circuit Court for Prince George's County reached the same result. Baltimore XV sought further review in this Court.

We hold that a sheriff's sale may not be vacated as a result of a judgment-debtor's post-sale satisfaction of the judgment. Accordingly, we reverse the judgment of the Circuit Court.

# I

## Background

### A. Common Law and Statutory Provisions Regarding Maryland Sheriff Sales

A sheriff's sale is one of three types of forced sales of real property that can occur under Maryland law. The other two are foreclosure sales based on a mortgage or deed of trust and judicial sales (such as a tax sale or a sale in lieu of partition). *See Fowler v. Fitzgerald*, 82 Md. App. 166, 173 (1990).

At common law, a sheriff's sale conveyed "only the right, title and interest of the owner or owners of the property" that was levied by writ. *Preissman v. Crockett*, 194 Md. 51, 56 (1949). The sheriff acted "as the ministerial officer of the law, not as the organ of the court…. His authority to sell rest[ed] on the law and on the writ, and [did] not, as in judicial sales, emanate from the court. The functions of the court terminate[d] at the rendition of the judgment[.]" *McCartney v. Frost*, 282 Md. 631, 636 (1978) (quoting D. RORER, JUDICIAL AND EXECUTION SALES § 46, at 25 (1873)). The court did not direct

"what shall be levied or sold, or how the sale shall be made. The law [was] the officer's only guide." *Id.*

A sheriff's sale generally was "final and valid as soon as it [was] made." *Fowler*, 82 Md. App. at 174 (quoting *Andrews v. Scotton*, 2 Bland 629, 637 (Md. Ch. 1826)). However, a sheriff's authority to sell levied property was not unlimited. As our predecessors explained, a sheriff had the duty "in making a … sale, to endeavor to obtain the best price in his power for the property to be sold[.]" *Nesbitt v. Dallam*, 7 G. & J. 494, 511 (1836). If a sheriff failed to do so, a court had the authority in some circumstances to overturn the sale: "Although the cases and the authorities indicate that a sale will not be set aside for mere inadequateness of price, they state that if the sale is so grossly inadequate as to shock the conscience of the court, or if there be but slight circumstances of unfairness in addition to great inadequateness of price, a sale will be set aside." *McCartney*, 282 Md. at 639.

The General Assembly has enacted a handful of statutes addressing sheriff's sales. *See* Md. Code Ann., Cts. & Jud. Proc. ("CJP") §§ 11-501 to 11-512 (1973, 2020 Repl. Vol., Supp. 2025). Among other things, the General Assembly has codified the common law precept that a sheriff sells only the defendant's interest in a particular property. *See id.* § 11-501 (a sheriff to whom a writ of execution is directed "may seize and sell the legal or equitable interest of the defendant named in the writ in real or personal property"). Thus, the successful bidder at a sheriff's sale purchases the defendant's interest in that property subject to all superior liens. *See Goldberg v. Frick Elec. Co., Inc.*, 363 Md. 683 (2001) (overturning a sheriff's sale based on a material misrepresentation in the advertisement of

3

sale concerning the amount of a superior lien). The General Assembly has provided that "[t]he sheriff … shall execute the writ, conduct the sale, and distribute the proceeds pursuant to rules adopted by the Supreme Court of Maryland." CJP § 11-501. If a sheriff states in his return "that the defendant has satisfied the judgment mentioned in the process in whole or in part, the court, on motion of the plaintiff, may order the sheriff to bring the money into court or show cause for the failure to do so." *Id.* § 11-510(a).

**B. Rules Regarding the Conduct of Sheriff's Sales**

Consistent with CJP § 11-501, this Court has promulgated rules regarding the conduct of sheriff's sales, as well as pre-sale and post-sale procedures.

1. <u>Pre-Sale</u>

A writ of execution directing the sheriff to levy upon the property of a judgment-debtor to satisfy a money judgment may be issued by the clerk of the District Court where the judgment was entered or is recorded. *See* Md. Rule 3-641(a).[1] The clerk may issue a writ of execution only upon a written request of a judgment-creditor. Md. Rule 3-641(a).

A sheriff levies upon a judgment-debtor's interest in real property by "entering a description of the property upon a schedule" and by posting a copy of the writ of execution and the schedule "in a prominent place on the property." Md. Rule 3-642(a). The sheriff must provide a copy of the writ and schedule to any person "found by the sheriff to be in possession of the property," and if that person is not the judgment-debtor, the sheriff must

---

[1] Because this case originated in the District Court of Maryland, we refer throughout this opinion to the rules pertaining to the District Court. Similar rules exist for cases originating in circuit courts. *See, e.g.*, Md. Rule 2-641.

promptly mail a copy of the writ and schedule to the judgment-debtor's last known address. Md. Rule 3-642(d).

After the sheriff levies a property, the property may be released from the levy, and therefore not subject to sale, if one of several circumstances occurs before a sale. First, property is released from a levy "when the judgment has been entered as satisfied and the costs of the enforcement proceedings have been paid." Md. Rule 3-643(a).[2]

Second, the judgment-debtor may file a bond in an amount sufficient to satisfy the judgment and enforcement costs. Md. Rule 3-643(b).

Third, upon motion of the judgment-debtor, the court may release some or all of the property from a levy if the court finds that: (1) the judgment has been vacated, has expired, or has been satisfied; (2) the property is exempt from levy; (3) the judgment-creditor "has failed to comply with these rules or an order of court regarding the enforcement proceedings"; (4) other property that is sufficient in value to satisfy the judgment and enforcement costs will remain under the levy after the release of the property sought to be released; (5) the levy upon the property sought to be released "will cause undue hardship" to the judgment-debtor and the judgment-debtor has delivered to the sheriff or made available for levy other property that is sufficient in value to satisfy the judgment and

---

[2] Maryland Rule 3-626(a) provides: "Upon being paid all amounts due on a money judgment, the judgment creditor shall furnish to the judgment debtor and file with the clerk a written statement that the judgment has been satisfied. Upon the filing of the statement the clerk shall enter the judgment satisfied." If a judgment-creditor fails to comply with Rule 3-626(a), the judgment-debtor may file a motion for an order declaring that the judgment has been satisfied. Md. Rule 3-626(b).

5

enforcement costs; or (6) the levy has existed for 120 days without sale of the property, unless the court for good cause extends the time. Md. Rule 3-643(c).

Fourth, by motion filed within 30 days after the sheriff levies property, the judgment-debtor "may elect to exempt from execution of the judgment selected items of property or cash not exceeding in amount the cumulative value permitted by law." Md. Rule 3-643(d). The court must release from the levy items of cash or property selected by the judgment-debtor "to the extent required by law." Md. Rule 3-643(d).

Fifth, a person other than the judgment-debtor who claims an interest in property under levy may file a motion requesting that the property be released. The motion must be served on the judgment-creditor and, if reasonably feasible, on the judgment-debtor. Md. Rule 3-643(e).

## 2. Conduct of the Sale

Upon request of the judgment-creditor, the sheriff, without further order of court, "shall sell property under levy in the manner provided by this Rule." Md. Rule 3-644(a). But "[n]o sale shall be made before 30 days after the levy or before disposition of an election made by the judgment debtor pursuant to Rule 3-643(d)." Md. Rule 3-644(a). The sheriff "may sell so much of the debtor's interest in the property under levy as is necessary to obtain the amount of the judgment and costs of the enforcement proceedings." Md. Rule 3-644(a).

At least 20 days before the sale of an interest in real property, "[t]he sheriff shall give notice of the time, place, and terms of the sale." Md. Rule 3-644(b). "The notice shall be posted on the courthouse door or on a bulletin board in the immediate vicinity of the

door of the courthouse and published in a newspaper of general circulation in the county where the property is located[.]" Md. Rule 3-644(b).

A sheriff's sale must be held in public. The sale "shall be for the highest cash offer, but the sheriff may reject all offers if they are unconscionably low and offer the property for sale at a later time." Md. Rule 3-644(c).

### 3. Post-Sale

The procedure following a sheriff's sale of an interest in real property "shall be as prescribed by Rule 14-305[.]"[3] Md. Rule 3-644(d). Thus, "[a]s soon as practicable, but not more than 30 days after a sale," the sheriff, as the person authorized to make the sale, must file with the court a complete report of the sale. Md. Rule 14-305(a). "Upon the filing of a report of sale …, the clerk shall issue a notice containing a brief description sufficient to identify the property and stating that the sale will be ratified unless cause to the contrary is shown within 30 days after the date of the notice." Md. Rule 14-305(d). To show "cause to the contrary," a judgment-debtor or other interested party may file exceptions to the sale. Md. Rule 14-305(e)(1). Exceptions must be in writing, "shall set forth the alleged irregularity with particularity, and shall be filed within 30 days after the date of a notice issued pursuant to section (d) of this Rule or the filing of the report of sale if no notice is

---

[3] Rule 14-305 prescribes post-sale procedures for foreclosure sales. The procedures following a sheriff's sale of an interest in real property differ in two respects from the provisions of Rule 14-305. First, Rule 14-305(g)'s provision for post-ratification referral to an auditor is inapplicable. Second, the court may not ratify a sheriff's sale until the judgment-creditor has filed a copy of the public assessment record for the real property kept by the supervisor of assessments. Md. Rule 3-644(d).

issued." Md. Rule 14-305(e)(1). "Any matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise." Md. Rule 14-305(e)(1).

If a party files exceptions to a sale, the court "shall determine whether to hold a hearing on the exceptions but it may not set aside a sale without a hearing." Md. Rule 14-305(e)(2). The court shall ratify the sale if: (1) the time for filing exceptions has expired and exceptions either were not filed or were filed but overruled; and (2) "the court is satisfied that the sale was fairly and properly made." Md. Rule 14-305(f). If the court is not satisfied that the sale was fairly and properly made, it may enter any order it deems appropriate. Md. Rule 14-305(f). If the court ratifies the sale, the sheriff "shall execute and deliver to the purchaser a deed conveying the debtor's interest in the property, and if the interests of the debtor included the right to possession, the sheriff shall place the purchaser in possession of the property." Md. Rule 3-644(d).

After the sheriff withdraws from the sale proceeds all appropriate unpaid sheriff's expenses and fees, unless the court orders otherwise, the sheriff must distribute the balance of the sale proceeds, first to the judgment-creditor in satisfaction of the judgment plus costs of the enforcement proceedings advanced by the judgment-creditor, and then to the judgment-debtor. Md. Rule 3-644(f). After making the required distributions, the sheriff must file a report that identifies the property that was sold, the purchaser, the amount of the proceeds, and the distribution of the proceeds. Md. Rule 3-644(g).

### C. This Case

In May 2018, the HOA filed suit against Ms. Carrington to collect unpaid homeowner assessments. The HOA obtained the Judgment in October 2019; the amount

due was $3,871.59. A notice of judgment lien was filed in the Circuit Court for Prince George's County in December 2019.

On October 21, 2022, the HOA filed a Request for Writ of Execution. By this time, according to the HOA, the total due on the Judgment was $4,860.79. The HOA sought a writ directing the Sheriff to levy upon the Property. The District Court issued the Writ of Execution on October 27, 2022. The Sheriff served the Writ of Execution, thereby levying the Property, on December 16, 2022.

On April 26, 2023, the HOA requested that the Sheriff schedule the Property for sale. The sale was held on August 29, 2023, at which time Baltimore XV purchased Ms. Carrington's interest in the Property for $6,000, subject to all prior liens and encumbrances of record. Baltimore XV paid the full purchase price at the time of the sale. The Sheriff's Report of Sale was signed on August 29, 2023, and docketed on November 29, 2023.

As discussed above, Rule 14-305(d) provides that, upon the filing of a report of sale, the clerk of court shall issue a notice that, among other things, states that the sale will be ratified unless cause to the contrary is shown within 30 days. In this case, after the Report of Sale was docketed on November 29, 2023, the Clerk of the District Court did not promptly issue the notice required under Rule 14-305(d). On May 28, 2024, Baltimore XV filed a line in the District Court requesting that the court move forward with the advertisement and ratification of the sale. The HOA and Ms. Carrington did not respond to this filing, and the Clerk took no action on it. On August 13, 2024, Baltimore XV filed a second line, this time requesting that the court issue a notice reporting the sale. The HOA and Ms. Carrington also did not respond to that filing.

On August 30, 2024, the Clerk issued a Notice concerning the sale of the Property. The Notice stated that the sale would be ratified "unless cause to the contrary thereof be shown on or before" October 30, 2024.[4]

Neither the HOA nor Ms. Carrington filed exceptions to the sale. However, on September 4, 2024, the HOA filed a Line stating that the Judgment had been satisfied, and requesting that the court vacate the sale and return the $6,000 "deposit" to Baltimore XV, as "[t]he Sale was never ratified[.]"

On September 6, 2024, Baltimore XV filed a motion to strike the HOA's Line requesting that the sale be vacated. Baltimore XV claimed it had a vested right in the Property as a result of the sale. According to Baltimore XV, the HOA had "no authority to unilaterally accept payment from [Ms. Carrington] and void the sheriff's sale." Baltimore XV asked that the court continue with the ratification process.

On September 16, 2024, the HOA filed a Notice of Satisfaction, reporting that Ms. Carrington had satisfied the Judgment. Baltimore XV then filed a Motion to Strike Notice of Satisfaction, repeating the points it had made in its motion to strike the HOA's Line of September 4. Baltimore XV again asked the court to continue with the ratification process.

After holding a hearing, the District Court denied both of Baltimore XV's motions to strike. Baltimore XV appealed. The Circuit Court held a de novo hearing on Baltimore

---

[4] A notice issued under Rule 14-305(d) is required to state, among other things, that the sale will be ratified unless cause to the contrary is shown within 30 days after the date of the notice. The Clerk issued the notice in this case on August 30, 2024. Thirty days following that date was September 29, 2024. Thus, the Clerk erred in providing a date of October 30, 2024 for the filing of exceptions to the sale.

XV's motions to strike. At that hearing, counsel for the HOA explained that after the Judgment was "entered and efforts to collect did not succeed, the [HOA] moved forward with a writ of execution, the Sheriff's sale process." Counsel continued:

> While that was going on, Ms. Carrington was in communication and was making payments sporadically, but not sufficient to cover the entire judgment amount. After the sale date payments continued to come in – and I think this is the point of contention a little bit – it was our view, [the HOA's] view, that because the sale was not ratified, that the issue could essentially be undone. In fact, I think I even mentioned that at the sale. But the payments came in and eventually satisfied the judgment.

Ms. Carrington stated at the hearing that she paid the Judgment "within a month from the sale date." Counsel for the HOA did not dispute that statement.[5] Ms. Carrington told the court that her family had assisted her with payments toward the Judgment because she was undergoing expensive chemotherapy. Even so, according to Ms. Carrington, she "missed some chemo just to take care of stuff in order for that judgment to go away, so [she] didn't lose [her] house with [her] children." Ms. Carrington continued: "I don't know all the laws and all of this. And the thought of losing my house for $6,000 and I'm still paying a mortgage is insane. This shouldn't even be allowed. I don't even understand how this is legal."

The court denied both of Baltimore XV's motions to strike. The court based its ruling on the circumstance that the sale "wasn't ratified. And the rules are clear that it's not complete until the sale is ratified."

---

[5] One month after the sale date was September 29, 2023. At oral argument, counsel for Baltimore XV stated that the first time Baltimore XV learned that Ms. Carrington had satisfied the Judgment was when the HOA filed its Line on September 4, 2024.

We granted Baltimore XV's petition for a writ of certiorari, *Baltimore XV Props. LLC v. Newsteps' Choice N. Homeowners Ass'n, Inc.*, 491 Md. 628 (2025), agreeing to review the following question:

> May a judgment creditor, after levy, execution and sheriff's sale of the judgment debtor's real property to a third-party purchaser, divest the sheriff's sale purchaser of the purchaser's interest in the property by accepting payment of the judgment in full from the judgment debtor and seek to have the sheriff's sale canceled and the judgment entered as satisfied?

## II

## Standard of Review

This appeal presents a question of law that we review de novo. *See, e.g.*, *Balt. Police Dep't v. Open Justice Balt.*, 485 Md. 605, 644-45 (2023); *Fuster v. State*, 437 Md. 653, 664 (2014) ("An appellate court reviews without deference a trial court's interpretation of a Maryland Rule.").

## III

## Discussion

Respondents argue that a sheriff's sale purchaser's inchoate equitable interest in the property sold at auction does not preempt the debtor's right to satisfy the judgment and extinguish the judgment lien prior to ratification of the sale. For this reason, Respondents assert, post-sale satisfaction of the judgment can be raised as an exception to a sheriff's sale. Respondents argue that the HOA's filings notifying the court of Ms. Carrington's satisfaction of the Judgment and requesting that the sale be vacated on that ground should be considered the equivalent of a timely filed exception under Rule 14-305(e). Alternatively, Respondents assert that there is a gap in Maryland law concerning what

happens when a judgment-debtor satisfies a judgment post-sale. According to Respondents, justice requires that such post-sale satisfaction of judgment should void the sale. Respondents contend that a contrary ruling would result in unintended harmful effects to the judgment-debtor and unjustly enrich a purchaser, especially a purchaser who delays seeking ratification of its inchoate equitable interest. Among other things, the debtor would continue to have the obligations of the legal owner of the property while the purchaser waits for its inchoate equitable right to ripen into an equitable interest. Respondents fault Baltimore XV for taking no action for many months after the sale to prompt the Clerk to go forward with the ratification process. According to Respondents, Baltimore XV knew that its inaction would increase the Property's value to its benefit and Ms. Carrington's detriment, if the sale were ratified. Meanwhile, according to Respondents, Baltimore XV will suffer no harm if Ms. Carrington's satisfaction of the Judgment voids the sheriff's sale because Baltimore XV will receive a full refund of the purchase price.

Baltimore XV argues that once a sheriff's sale has been held, the judgment-creditor's acceptance of payment from the judgment-debtor in satisfaction of the judgment does not void the sale. That is because, according to Baltimore XV, once the sale has occurred, the purchaser has a vested interest in the property. Baltimore XV contends that post-sale satisfaction of the judgment cannot be raised as an exception to the sale under Rule 14-305, which concerns irregularities in the sale, not the rights of the parties with respect to the property. To the extent the delay between the sale and the Clerk's issuance of the notice of the sale led to negative consequences for Ms. Carrington, Baltimore XV faults the HOA. According to Baltimore XV, the HOA should not have gone forward with

the sale if it was content to allow Ms. Carrington to satisfy the Judgment by making payments over time. And, after the sale, the HOA should not have accepted any further payment from Ms. Carrington toward satisfaction of the Judgment.

We agree with Baltimore XV.

### A. Maryland's Sheriff's Sale Rules Derogate the Common law, and Therefore Are Strictly Construed.

As discussed above, at common law, a sheriff's sale generally was deemed final and valid as soon as it was made. *See Fowler*, 82 Md. App. at 174; *McCartney*, 282 Md. at 639 (discussing limited circumstances in which courts overturned sheriff's sales). In 1984, by rule this Court made sheriff's sales subject to court ratification. *See Fowler*, 82 Md. App. at 174-75; *Commentary on the New Maryland Rules of Civil Procedure*, 43 Md. L. Rev. 669, 851 (1984). In doing so, this Court derogated the common law with respect to sheriff's sales.

Statutes and rules that derogate the common law are strictly construed and are not presumed to "make any alteration in the common law other than what has been specified and plainly pronounced." *Breslin v. Powell*, 421 Md. 266, 287 (2011) (quoting *Walzer v. Osborne*, 395 Md. 563, 573-74 (2006)); *see also State v. Collins*, 265 Md. 70, 78 (1972) (construing the Maryland Rules). Thus, we must strictly construe the applicable rules so as not to effect additional alterations to the common law of sheriff's sales.

**B. The Applicable Rules Do Not Allow a Sheriff's Sale to Be Undone by a Judgment-Debtor's Post-Sale Satisfaction of the Judgment.**

1. <u>Post-Sale Satisfaction of the Judgment Cannot Be Raised as an Exception to a Sheriff's Sale.</u>

Under Rules 3-644 and 14-305, a party who opposes ratification of a sheriff's sale must file written exceptions to the sale. Because the Court must strictly construe these rules as applied to a sheriff's sale, a party may raise post-sale satisfaction of the judgment as an exception only if Rule 14-305 plainly allows it. Rule 14-305 does not do so.

Rule 14-305 provides that exceptions "shall set forth the alleged irregularity with particularity[.]" An "irregularity" within the meaning of Rule 14-305 is a problem with the sale itself. *See Hallam v. New Life Evangelical Baptist Church, Inc.*, ___ Md. ___, 2026 WL 1784482, at \*13 (2026).[6] Examples of such irregularities include an unconscionably low sale price, errors in the advertisement of sale, and the chilling of bidding on the property. *See Bates v. Cohn*, 417 Md. 309, 327 (2010). An example of such an irregularity in the sheriff's sale context may be found in *Goldberg v. Frick Electric Co.* There, the purchaser filed exceptions in which it alleged that the notice of sale contained material misrepresentations concerning the mortgages on the property. 363 Md. at 687-88. Relying on cases involving foreclosure sales and judicial sales, *id.* at 699-702, we determined that a court can set aside a sheriff's sale if there is a "misrepresentation or mistake that creates a prejudicial effect on the purchaser[.]" *Id.* at 702.

---

[6] In *Hallam*, we left open the question whether a borrower may raise for the first time as a post-sale exception a claim of fraud of which the borrower lacked notice pre-sale. We referred that question and related questions to the Standing Committee on Rules of Practice and Procedure. *See Hallam*, 2026 WL 1784482, at \*15 n.14.

Similarly, we can look to our foreclosure jurisprudence to determine what does *not* constitute an "irregularity" within the meaning of Rule 14-305(e)(1). In *Bates*, the borrower sought to overturn a foreclosure sale by arguing that her lender had not complied with federal pre-foreclosure loan mitigation requirements referred to in the deed of trust. 417 Md. at 316-17. We held that "a lender's failure to comply with loss mitigation requirements goes to its *right* to foreclose, rather than its procedural handling of the sale." *Id.* at 329 (emphasis in original). Thus, the borrower's allegation did not qualify as an irregularity that was cognizable as a post-sale exception. *Id.* at 324, 329-30.

In *Hallam*, we reiterated the distinction between pre-sale objections to the right to foreclose and post-sale exceptions based on irregularities in the sale. *See Hallam*, 2026 WL 1784482, at *13. We held that, if a borrower knows or reasonably should know of a defense to the right to foreclose in advance of the sale, the borrower must raise that defense in a motion to stay the sale and dismiss the action. *Id.* at *2. We further held that the borrowers in *Hallam* could not re-raise as post-sale exceptions the allegations concerning the validity of the lien that they had included in their pre-sale motion to stay and dismiss. *Id.* at *17.

Respondents' argument in support of vacating the sale was that, after Ms. Carrington satisfied the Judgment, Baltimore XV had no right to obtain Ms. Carrington's interest in the Property through ratification of the sale. That argument is akin to the argument that the lienholders in *Bates* and *Hallam* had no right to foreclose. Just as the borrower's claims in *Bates* and *Hallam* were not proper post-sale exceptions to a

foreclosure sale, post-sale satisfaction of the judgment is not cognizable as an exception to a sheriff's sale. It is not an irregularity in the sale itself.[7]

### 2. A Judgment-Debtor May Obtain Release of Property from a Levy Only Before a Sheriff's Sale Occurs.

At oral argument, counsel for the HOA observed that, unlike in the foreclosure context, there is no injunction remedy that a judgment-debtor may use to stay and dismiss a sheriff's sale. According to counsel, this is a gap in the law relating to sheriff's sales that a court must fill by voiding the sale if the judgment-debtor satisfies the judgment before the sale is ratified. We disagree.

First and foremost, Respondents cite no case at common law, and we are aware of none, in which a court invalidated a sheriff's sale based on a judgment-debtor's post-sale satisfaction of the judgment. We cannot construe the Maryland Rules to fill a perceived gap if that gap, as here, existed at common law.

Second, Respondents are comparing apples to oranges. Rule 14-211, the injunction remedy available to borrowers in foreclosure actions, is a pre-sale device. This case concerns the ability of a judgment-debtor to obtain post-sale relief. Thus, Respondents' comparison to Rule 14-211 is inapt.

Third, while there is no pre-sale motion for injunctive relief available with respect to a sheriff's sale, a judgment-debtor may obtain pre-sale release of property from a levy

---

[7] Because we conclude that post-sale satisfaction of the judgment cannot be raised as an exception to a sheriff's sale, we need not decide whether the HOA's papers notifying the court of Ms. Carrington's satisfaction of the Judgment and requesting that the sale be vacated can be considered an exception under Rule 14-305(e)(1), despite the fact that the HOA did not file them as such.

17

through several avenues. For instance, a judgment-debtor may satisfy the judgment before the sale occurs by providing payment to the judgment-creditor. Under Rule 3-643(a), property is released from levy when the judgment has been entered as satisfied and the costs of the enforcement proceedings have been paid. Alternatively, the judgment-debtor may provide the sheriff with funds sufficient to satisfy the judgment before the sheriff conducts the sale. That scenario is contemplated by CJP § 11-510(a), which provides that, if a sheriff states in their return that the defendant has satisfied the judgment mentioned in the writ of execution, the court, on motion of the plaintiff, may order the sheriff to bring the money into court or show cause for the failure to do so.

The other pre-sale release options available to a judgment-debtor are: (1) to file a bond, Md. Rule 3-643(b); (2) to move for court-ordered release if at least one of six enumerated circumstances is present, Md. Rule 3-643(c); and (3) to elect to exempt selected items from execution of the judgment as allowed by law, Md. Rule 3-643(d).

Maryland law provides a clear and logical approach to the release of property from a levy, including by satisfaction of the judgment. Before a sale, judgment-debtors may pursue several avenues for release of levied property. Post-sale, those options no longer are

available.[8] A contrary reading of the Rules would violate the requirement that we narrowly construe provisions in derogation of common law.[9]

3. A Sheriff's Sale Purchaser Has the Right to Go Through the Ratification Process.

After a sheriff's sale occurs, as is the case in the foreclosure context, the purchaser obtains an inchoate equitable interest in the subject property. That is because the sale is not complete until ratification. *See Empire Props., LLC v. Hardy*, 386 Md. 628, 646 (2005). The purchaser's inchoate equitable interest becomes a complete equitable interest when the sheriff's sale is ratified by the court. *See id.* at 646-47. After ratification, the sheriff must execute and deliver to the purchaser a deed conveying the debtor's interest in the property.

---

[8] Nothing prevents a judgment-debtor from providing a judgment-creditor with funds sufficient to satisfy the judgment after the sale but before ratification. However, satisfying the judgment in that fashion does not void the sale. As discussed below, the purchaser has a right to proceed with the ratification process. If the judgment-debtor satisfies the judgment post-sale through the payment of cash or other property, upon ratification the judgment-debtor will be entitled to receive the share of the sale proceeds that otherwise would have gone to the judgment-creditor to satisfy the judgment.

[9] Respondents do not argue that Rule 3-643(a) allows a judgment-debtor to obtain release of a levy by providing cash or other property to a judgment-creditor sufficient to satisfy the judgment after the sale but before ratification. However, that is Justice Killough's interpretation of the Rule. *See, e.g.*, Dissenting Op. of Killough, J., Slip Op. at 2. The import of Justice Killough's position is that Rule 3-643(a) includes both a mechanism to release a levy pre-sale and a post-sale right of redemption until a sheriff's sale is ratified. We disagree that Rule 3-643(a) provides a post-sale right of redemption. As discussed, there was no post-sale right of redemption at common law. If this Court had intended to provide a post-sale right of redemption by adopting Rule 3-643(a) – which would have been a significant additional derogation of the common law of sheriff's sales – the Court would have said so explicitly in the Rule. Moreover, we are aware of nothing in the history of Rule 3-643 that indicates it was intended to alter the common law in the manner that Justice Killough suggests.

19

Md. Rule 3-644(d). After receipt of the deed, the purchaser has complete legal title to what formerly was the judgment-debtor's interest in the subject property.[10]

Respondents correctly observe that the risk that ratification may not take place is inherent in the inchoate nature of the interest the purchaser acquires at a sheriff's sale. For this reason, Respondents argue that justice requires that a judgment-debtor's post-sale satisfaction of the judgment void a sheriff's sale that has not yet been ratified.

We disagree. A purchaser's inchoate equitable interest confers an important right upon the purchaser: the right to the ratification process set forth in the Maryland Rules. Allowing a judgment-debtor's post-sale satisfaction of the judgment to void a sheriff's sale would violate that right. As discussed, a judgment-debtor or other interested party may file exceptions to the sale based on alleged irregularities, including a complaint that the sale price is so insufficient that the sale should be overturned. However, if the court discerns no irregularities in the sale and therefore overrules any exceptions that have been filed, the purchaser has the right to have the sale ratified and to receive complete legal title to the judgment-debtor's interest in the property.

---

[10] In practical terms, there is not a significant distinction between a sheriff's sale purchaser's complete equitable interest upon ratification and their complete legal interest in the property after receipt of the deed. After ratification, the sheriff must convey the debtor's interest in the property to the purchaser. *See* Md. Rule 3-644(d). That is because the purchaser provided full payment for that interest at the sale. There is nothing left for the purchaser to do after ratification. This is in contrast to: (1) a foreclosure sale, where payment of the purchase price does not occur until after ratification, *see IA Constr. Corp. v. Carney*, 341 Md. 703, 711 (1996); and (2) a tax sale after entry of the judgment foreclosing the right to redemption, where the tax sale purchaser must pay the balance of the purchase price, post-sale taxes, penalties, and interest, within 90 days. *See Mayor and City Council of Balt. v. Thornton Mellon, LLC*, 478 Md. 396, 444-45 (2022).

20

A contrary result would allow a judgment-debtor to nullify a sheriff's sale by satisfying the judgment at any point before ratification, including during the 30-day period to file exceptions and for as long as it takes the court to rule on any exceptions that are filed. This would devalue a purchaser's inchoate interest significantly, likely resulting in fewer bids at sheriff's sales. As we explained in the foreclosure context:

> [I]f a borrower was able to raise any sort of exception after the foreclosure sale, there undoubtedly would be a chilling effect on interested prospective purchasers coming to sales. Prospective third-party purchasers would be unable – based on most practical notions of what constitutes due diligence – to gauge against such claims the risk of an intended investment. Being a bona fide purchaser for value then would not mean as much or even offer the traditional safe harbor underlying that status.

*Bates*, 417 Md. at 329-30; *see also Hallam*, 2026 WL 1784482, at *14. Fewer bids means lower sale prices. *Hallam*, 2026 WL 1784482, at *14. Lower sale prices always are bad for judgment-debtors and sometimes adversely affect judgment-creditors.[11] In addition, when fewer persons bid at a sheriff's sale, the chances increase that no bid will be high enough to pass muster and that the sheriff will have to conduct another auction at a later date. That may add more cost to the process and result in delays in satisfying the judgment to the detriment of both judgment-creditors and judgment-debtors. In short, society has an interest in encouraging prospective purchasers to bid at sheriff's sales. Respondents' approach would undermine that interest.

---

[11] If a sale price is not sufficient to satisfy a judgment in its entirety, then the judgment-debtor will still owe money to the judgment-creditor after the sale. That is not the preferred outcome for either party.

In sum, Ms. Carrington's satisfaction of the Judgment after the sale does not provide a basis to vacate the sale. The courts below erred in denying Baltimore XV's motions to strike the HOA's filings. We shall reverse the judgment of the Circuit Court and order a remand to the District Court for further proceedings as discussed below.

Before we get there, however, we make a few observations. It is unfortunate that Ms. Carrington faces the prospect of losing her home after having already satisfied the Judgment. Had Ms. Carrington realized that her payment of the Judgment after the sheriff's sale would not result in the vacating of the sale, it seems likely that she would not have used any more of her limited funds (and her family's funds) to satisfy the Judgment, especially when she was undergoing chemotherapy. Rather, Ms. Carrington presumably would have allowed the Judgment to be satisfied through the proceeds of the sale, in the event that the court ratified the sale. If the sale ultimately is ratified on remand, Ms. Carrington will receive those proceeds of the sale that otherwise would have gone to the HOA to satisfy the Judgment, as well as all other proceeds after the Sheriff deducts unpaid expenses and fees. *See* Md. Rule 3-644(f). In the meantime, however, Ms. Carrington and her family have lost the use of the funds that Ms. Carrington paid to the HOA after the sale.

At oral argument, counsel for the HOA observed that "oftentimes sheriff sales are sort of the nuclear option for homeowners associations. They've tried bank garnishments, they've tried wage garnishments, and they've come up ineffective. And so the only way to get the debtor's attention is through the writ of execution process." Having apparently gotten Ms. Carrington's attention by levying the Property and scheduling a sheriff's sale, if the HOA was content to allow Ms. Carrington to complete her satisfaction of the

22

Judgment through sporadic payments, the HOA should have canceled the sale. After the HOA exercised the nuclear option of going forward with the sale, and Baltimore XV obtained an interest in the Property, the HOA did not have the power to void the sale by accepting Ms. Carrington's payment of the remainder of the Judgment.

We recognize that, to the extent Ms. Carrington has continued to make mortgage payments on her home after the sale, Baltimore XV may acquire the Property subject to a mortgage with a lower principal balance than would have been the case if ratification had occurred sooner.[12] However, the Rules do not require a sheriff's sale purchaser to take further action after the sale. Rather, it is the sheriff and the clerk of court who have post-sale duties. First, "[a]s soon as practicable, but not more than 30 days after a sale," the sheriff must file a report of sale with the court. Md. Rule 14-305(a). Second, "[u]pon the filing of a report of sale," the clerk must issue a notice that effectively begins the 30-day period for filing of exceptions. *See* Md. Rule 14-305(d).

Here, the Sheriff signed the Report of Sale on August 29, 2023; it was docketed on November 29, 2023.[13] The Clerk was required to issue the Rule 14-305(d) notice "[u]pon the filing" of the Report of Sale on November 29, 2023. It should not have been necessary

---

[12] The record does not contain any information about the terms of Ms. Carrington's mortgage.

[13] The record does not reflect why there was a three-month delay between the signing and docketing of the Report of Sale. Under Rule 14-305(a), the Sheriff was required to file the Report of Sale as soon as practicable after the sale and, in any event, no later than 30 days after the sale, which was September 28, 2023.

23

for Baltimore XV to prompt the Clerk to issue that notice.[14] Moreover, according to Ms. Carrington, she satisfied the Judgment within one month of the sale – i.e., by the end of September 2023. The HOA did not take any action to notify the District Court and Baltimore XV of this development until early September 2024, after the Clerk issued the Rule 14-305(d) Notice on August 30, 2024. Had the HOA filed a notice of satisfaction promptly, the parties might have reached the point at which we arrive today more quickly.

### C. On Remand, Ms. Carrington May File Exceptions to the Sale.

The record does not reflect what discussions, if any, occurred between Ms. Carrington and the HOA concerning Ms. Carrington's ability to undo the sale by satisfying the Judgment prior to ratification. The record also is silent as to why Ms. Carrington did not file any exceptions. It seems likely that the HOA's September 2024 filings led Ms. Carrington to believe that she did not need to take further action to try to vacate the sale.

At the hearing in the Circuit Court, Ms. Carrington stated that "the thought of losing [her] house for $6,000" while she was still paying her mortgage was "insane." She said that what was happening "shouldn't even be allowed" and that she did not "even understand how this is legal." In light of these comments, we think it is likely that, if Ms.

---

[14] Because no Rule 14-305(d) notice was issued upon the filing of the Report of Sale, exceptions were due to be filed within 30 days after the filing of the Report of Sale. *See* Md. Rule 14-305(e)(1). The thirtieth day following the docketing of the Report of Sale was December 29, 2023. At no time after that date did Baltimore XV ask the District Court to ratify the sale immediately on the grounds that: (1) the time for filing exceptions had expired and exceptions to the Report of Sale were not filed; and (2) the sale was fairly and properly made. Rather, in August 2024, Baltimore XV asked the District Court to issue a notice reporting the sale. The District Court issued the Notice on August 30, 2024, providing a deadline of October 30, 2024, for the filing of exceptions.

Carrington had not relied on the HOA's incorrect understanding of the law, she would have filed timely exceptions to the sale. Justice requires that, on remand to the District Court, Ms. Carrington be given 30 days in which to file exceptions under Rule 14-305(e)(1).[15] The 30-day period will begin on the first day after the case is remanded to the District Court. Once that 30-day period has run, the District Court shall conduct further proceedings and the Sheriff shall take further action as required by law.

## IV

## Conclusion

A judgment-debtor's post-sale satisfaction of the judgment cannot be raised as an exception to a sheriff's sale. A judgment-debtor may obtain release of property from a levy

---

[15] It is not possible to determine at this time whether the sale price for Ms. Carrington's interest in her home is unconscionably low. Because we do not know the principal balance of Ms. Carrington's mortgage at the time of the sale, we do not know what the value of her interest in the home was at that time. In this regard, *McCartney v. Frost* is instructive. There, the record reflected that the judgment-debtor's interest in the home at the time of sale had a fair market value of approximately $18,000, based on an appraisal of $24,000, minus an existing mortgage of approximately $6,000. *See McCartney*, 282 Md. at 633. The sale price was $2,000. *Id.* This Court overturned the sale. Although we observed that "[o]ne does not expect a price to be produced at a forced sale to be commensurate with fair market value[,]" particularly "in a case such as this where bidders were not permitted to inspect the interior of the dwelling[,]" we nevertheless concluded that "the spread here between a fair market value of $18,000 ($24,000 appraisal less mortgage of $6,000) and the $2,000 sale price is indicative of an unfair sheriff's sale, such as shocks the conscience of the Court." *Id.* at 640.

Here, we have no way to compare the sale price with the fair market value of Ms. Carrington's interest in her home at the time of the sale. On remand, if Ms. Carrington excepts to the sale based on the sale price, she should be prepared to submit proof of the principal amount of her mortgage as of the date of sale. It may also behoove Ms. Carrington to provide the District Court with proof of the estimated fair market value of the home as of the date of the sale.

through satisfaction of the judgment only before a sheriff's sale occurs. The purchaser at a sheriff's sale obtains an inchoate equitable interest in the subject property. That interest provides the purchaser with the right to go through the ratification process set forth in the Maryland Rules.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH THE INSTRUCTION TO REVERSE THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO PAID BY RESPONDENT NEWSTEPS' CHOICE NORTH HOMEOWNERS ASSOCIATION, INC.**

Circuit Court for Prince George's County
Case No.:  C-16-CV-24-006056
Argued:  November 4, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 24

September Term, 2025

---

BALTIMORE XV PROPERTIES LLC

v.

NEWSTEPS' CHOICE NORTH
HOMEOWNERS ASSOCIATION, INC., ET AL.

---

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

---

Concurring Opinion by Fader, C.J., which Booth
and Gould, JJ., join.

---

Filed: July 14, 2026

I agree with the Majority that, under existing law, following a sheriff's sale, exceptions are limited to addressing issues with the sale. Majority Slip Op. ("Maj. Op.") at 15. I further agree with the Majority that, under existing law, post-sale payment of the debt that gave rise to the sale is not an irregularity in the sale. *Id.* at 16-17. The fairness of the sale, which is what courts are permitted to assess under Rule 14-305(e) (providing for "exceptions *to the sale*" (emphasis added)) & (f) (requiring ratification if exceptions to the sale are not filed or are overruled and "the court is satisfied that *the sale* was fairly and properly made" (emphasis added)), is not altered by post-sale events. Accordingly, I join the Majority opinion. I write separately to address the suggestion in Justice Killough's dissent that the sheriff's sale at issue may allow Baltimore XV to purchase a $458,000 house for $6,000. Dissenting Op. of Killough, J. ("Killough Op."), at 1, 4, 6, 8, 16, 27, 30, 30 n.11, 33, 39. That suggestion is wrong or overstated in several different respects.

First, Baltimore XV did not purchase the house for $6,000. Baltimore XV purchased Ms. Carrington's interest in that house for $6,000. Md. Code Ann., Cts. & Jud. Proc. § 11-501 (2020 Repl.; 2025 Supp.) (authorizing the sale of "the legal or equitable interest of the defendant"); Maj. Op. at 3. The record contains no information about the value of Ms. Carrington's interest. The record supports that the house is subject to a mortgage but contains no information about the outstanding balance of that mortgage, any second mortgage or home equity loan that might be outstanding, or any other debt that might be secured by the house in a superior position to the HOA's lien. Justice Killough implies that because Ms. Carrington has been paying a mortgage on the house since 2001,

she must have substantial equity in it. Killough Op. at 1 n.1. She may. But she also may not.[1] We cannot decide this case based on speculation with no foundation in the record.

Second, if it turns out to be true that Baltimore XV purchased an interest worth hundreds of thousands of dollars for $6,000 at a sheriff's sale, I would have no hesitation in concluding that the sale should be set aside for unconscionability. If, on remand, it turns out that the interest purchased by Baltimore XV is worth anywhere close to that amount, I assume the District Court will act accordingly. As the Majority explains, we previously set aside a sale with a much less significant disparity than that for unconscionability in *McCartney v. Frost*, 282 Md. 631, 640 (1978). Maj. Op. at 25 n.15. But those facts are not before us, and we should not decide this case on speculation.

Third, the fate of the sale is far from settled. Although limited to issues related to the sale, the District Court's ratification decision on remand should not be a rubber stamp. Given that Ms. Carrington did not file exceptions—likely, as the Majority opinion surmises, because of the HOA's incorrect legal position, Maj. Op. at 24-25—the record does not contain any details about the sale, except that it followed more than three years

---

[1] The only information in the record that is suggestive of the value of Ms. Carrington's interest in the house is that it was sold for $6,000. If the auction market was functioning properly, that suggests that the value of Ms. Carrington's interest in the house was nowhere near its assessed value. But it is possible that the auction market was not functioning properly, that Ms. Carrington had substantial equity in the house, and that there were problems with the sale that resulted in a deflated price. If that is the case, as Justice Killough hypothesizes, Ms. Carrington can raise those issues on remand through exceptions. Maj. Op. at 24. If Justice Killough is correct that the sheriff's sale process "routinely produces . . . a staggering disparity[,]" then I would agree that the market is broken and the process ripe for reassessment. Killough Op. at 27. But that is not part of the record before us. And the General Assembly is the body best equipped to gather the relevant facts and act on them.

2

after the HOA first obtained a judgment against Ms. Carrington for the underlying debt, *id.* at 8-9 (recounting that the HOA filed suit in May 2018, obtained a judgment in October 2019, filed notice of the lien in December 2019, and requested a writ of execution in October 2022; the sheriff then served the writ in December 2022 and conducted the sale in August 2023). We do know that the proceedings *following* the sale were quite unusual and troubling. The sheriff failed to timely file the report of sale, which was not docketed until three months after the sale. *Id.* at 9. The clerk failed to timely issue the notice required by Rule 14-305(d), taking more than nine months to do so, including more than three months after Baltimore XV filed a line requesting it. *Id.* Neither the HOA nor Ms. Carrington responded to either line filed by Baltimore XV or provided any notice that Ms. Carrington had paid the HOA fees for more than a year after they were paid. *Id.* at 9-10. Those facts would seem to render this case an outlier. However, the record before us does not tie any of those issues to the sale itself.

Should Ms. Carrington file exceptions on remand, it will be incumbent on the District Court to adjudicate them. If there were any irregularities in the sale, it must be set aside. And if that occurs, given that Ms. Carrington has paid her underlying debt, there will be no basis to conduct another sale. The sale has not been ratified, ratification is not inevitable, and there is no basis to infer that the District Court's review will be anything but thorough, appropriate, and in accord with our precedent. A sheriff's sale should be conducted "to promote competition and to secure the best price." *Goldberg v. Frick Electric Co.*, 363 Md. 683, 696 (2001) (quoting *Buckeye Dev. Corp. v. Brown & Shilling, Inc.*, 243 Md. 224, 230 (1966)). A sale for an unconscionable price may not be ratified.

3

*McCartney*, 282 Md. at 639. A sale involving "slight circumstances of unfairness" and a greatly inadequate price may not be ratified. *Id.* A sale that was not advertised as required may not be ratified. *Bates v. Cohn*, 417 Md. 309, 327 (2010). A sale advertised using inaccurate information may not be ratified. *Goldberg*, 363 Md. at 692. A sale involving collusion among bidders or where there was interference with a competitive bidding process may not be ratified.[2] *Bates*, 417 Md. at 327.

Finally, sheriff's sales have existed for centuries. That, in and of itself, does not mean they should continue to exist or continue to do so in their current form. But it is not for this Court, in its capacity adjudicating this unique case with its unusual facts, to end that practice. Justice Killough makes several observations about sheriff's sales that are not part of the record in this case. Killough Op. at 30-32. He also asserts that "[t]he Majority's decision will lead to a great many more people losing their homes because of debt[,]" *id.* at 35, without the record containing evidence of a single other case of someone paying off an underlying debt between a sheriff's sale and ratification. If his observations are true, they certainly point to a system that is not functioning as intended and that should be examined closely. But the General Assembly is much better positioned than we are to assess the current practice of sheriff's sales, weigh whatever value they have against the

---

[2] Justice Killough's counterfactual hypothetical sale involving a different debtor and a different house incorrectly assumes no role for ratification. The facts of his hypothetical, including a sale price of $4,000 for an interest worth up to $400,000, Killough Op. at 7-8, would seem to ensure problems at ratification. Nothing about the Majority's analysis in this case suggests that a Maryland court would ratify either the sale of the hypothetical interest of Justice Killough's hypothetical property owner or, if Justice Killough's speculation about the value of Ms. Carrington's interest is correct, the sale at issue here.

4

costs of the current system, assess the implications and likely consequences of ending them, and decide whether they should continue to be a feature of Maryland law and, if so, in what form.  Respectfully, I concur.

Justices Booth and Gould advise that they join in this concurrence, as well as the Majority opinion.

IN THE SUPREME COURT

OF MARYLAND

No. 24

September Term, 2025

_____

BALTIMORE XV PROPERTIES LLC

v.

NEWSTEPS' CHOICE NORTH
HOMEOWNERS ASSOCIATION, INC., ET
AL.

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Dissenting Opinion by Watts, J., which Eaves
and Killough, JJ., join.

_____

Filed: July 14, 2026

Respectfully, I dissent. I disagree with the Majority's holding that "a sheriff's sale may not be vacated as a result of a judgment-debtor's post-sale satisfaction of the judgment" and that a debtor may only obtain a release of the property by satisfying the judgment prior to a sheriff's sale. Maj. Slip Op. at 2. I disagree with the conclusion that, under Maryland Rule 14-305(e)(1), which authorizes exceptions to a sale setting "forth the alleged irregularity with particularity[,]" an "irregularity" is defined as "a problem with the sale itself." Maj. Slip Op. at 15. I would affirm the judgment of the Circuit Court for Prince George's County.

To determine whether a court may set aside a sheriff's sale prior to ratification based on a showing that the underlying judgment has been paid, like the Majority, I would look to Maryland Rule 14-305, but I would reach a different result. See Md. R. 2-644(d) ("The procedure following [a sheriff's] sale of an interest in real property shall be as prescribed by Rule 14-305[.]"); Md. R. 3-644(d) (same). On its face, Maryland Rule 14-305(e)(1) provides that a party "may file exceptions to [a] sale[,]" and exceptions "shall set forth the alleged irregularity with particularity[.]" Relying primarily on case law involving mortgage foreclosures, even though such language is notably absent from Maryland Rule 14-305, the Majority concludes that its language permits exceptions only for irregularities involving "a problem with the sale itself." Maj. Slip Op. at 15. To the contrary, despite our case law concerning exceptions in the mortgage foreclosure sale context, a proper interpretation of Maryland Rule 14-305 demonstrates that this Court did not intend to promulgate a Rule restricting the types of irregularities for which a party may file

exceptions after all sales of property to ones involving "problem[s] with the sale itself."

Maj. Slip Op. at 15.

In interpreting a Maryland Rule, "the principles applied to statutory interpretation are also used[.]" Lisy Corp. v. McCormick & Co., Inc., 445 Md. 213, 221, 126 A.3d 55, 60 (2015). When performing an exercise of statutory interpretation, "[t]he cardinal rule . . . is to ascertain and effectuate the intent of the General Assembly." Adelakun v. Adelakun, 491 Md. 1, 18, 338 A.3d 614, 624 (2025) (quoting Amaya v. DGS Constr., LLC, 479 Md. 515, 540, 278, A.3d 1216, 1231 (2022)). To ascertain and effectuate the General Assembly's intent, this Court must adhere to the following principles:

> [W]e look first to the language of the statute, giving it its natural and ordinary meaning. We do so on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant. When the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written. In addition, we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. If there is no ambiguity in the language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends.

Id. at 18, 338 A.3d at 624 (quoting Amaya, 479 Md. at 540-41, 278 A.3d at 1231).

> We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the [General Assembly] in enacting the statute. We presume that the [General Assembly] intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

Lockshin v. Semsker, 412 Md. 257, 275-76, 987 A.2d 18, 29 (2010) (citation modified).

> Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions. In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

Adelakun, 491 Md. at 19, 338 A.3d at 624-25 (quoting Wheeling v. Selene Finance LP, 473 Md. 356, 377, 250 A.3d 197, 209 (2021)).

**I. Plain Language**

The plain meaning of "irregularity," as used in Maryland Rule 14-305(e)(1), unambiguously indicates that this Court did not intend to promulgate a Rule limiting the types of irregularities for which a party may file exceptions. Because the Rule does not define the word "irregularity," it is necessary to consult the word's "common and everyday meaning" for guidance. Adelakun, 491 Md. at 18, 338 A.3d at 624 (citation modified). Definitions of the word "irregularity" are wide-ranging. The Oxford English Dictionary defines "irregularity" as "deviation from what is usual or normal; abnormality, anomalousness." *Irregularity*, Oxford English Dictionary (Oxford Univ. Press 2026), available at https://www.oed.com/dictionary/irregularity_n?tab=meaning_and_use [https://perma.cc/VPT8-4QVM]. "Irregularity" is also defined as "something that is irregular (such as improper or dishonest conduct)" and the legal definition is "something that is irregular[,]" with "irregular" meaning, among other things, "not being or acting in

- 3 -

accord with laws, rules, or established custom[.]" *Irregularity*, Merriam-Webster Dictionary (Merriam-Webster, Inc. 2026), <u>available at</u> https://www.merriam-webster.com/dictionary/irregularity [https://perma.cc/JPW4-489S]; *Irregular*, Merriam-Webster Dictionary (Merriam-Webster, Inc. 2026), <u>available at</u> https://www.merriam-webster.com/dictionary/irregular [https://perma.cc/YTU6-EPTR]. Cambridge Dictionary defines "irregularity" in pertinent part as "something that is not correct or acceptable[.]" *Irregularity*, Cambridge Dictionary (2026 Cambridge Univ. Press & Assessment), <u>available at</u> https://dictionary.cambridge.org/dictionary/english/irregularity [https://perma.cc/4WTC-566Y]. And, Black's Law Dictionary defines "irregularity" in relevant part as "[s]omething irregular; esp[ecially], an act or practice that varies from the normal conduct of an action." *Irregularity*, Black's Law Dictionary (12th ed. 2024); <u>see also</u> *Irregular*, Black's Law Dictionary (12t ed. 2024) ("Irregular" is defined as "[n]ot in accordance with law, method, or usage; not regular.").

The only limiting modifier for the word "irregularity" in Maryland Rule 14-305(e)(1) is that an "irregularity" must be "alleged[.]" "Exceptions shall be in writing, shall set forth the alleged irregularity with particularity," and shall be filed within 30 days of the notice required under section (d) of the Rule. Md. R. 14-305(e)(1). Merriam-Webster's Dictionary defines "alleged" as "asserted to be true or to exist," and the Oxford English Dictionary defines "alleged" as "[t]o claim (something unproven) as true; to assert or affirm without proof, or pending proof." *Alleged*, Merriam-Webster Dictionary (Merriam-Webster, Inc. 2026), <u>available at</u> https://www.merriam-webster.com/dictionary/alleged [https://perma.cc/PZ79-JBP6]; *Alleged*, Oxford English Dictionary (Oxford Univ.

Press 2026), <u>available at</u> https://www.oed.com/dictionary/allege_v1?tab=meaning _and_use [https://perma.cc/2RFB-HTN6]. Thus, under Maryland Rule 14-305(e)(1), so long as a party sets forth a claimed deviation from what is usual or normal, that party has "set forth [an] alleged irregularity" under the plain language of the Rule. The Rule's text unambiguously leads to the conclusion that subsection (e)(1) does not restrict the type of irregularity that a party may raise to mean irregularities involving a problem with the sale.

Maryland Rule 14-305's structure confirms that courts must look beyond the Majority's limited definition of the word "irregularities" when ratifying a sheriff's sale because limiting the definition of irregularities to problems with a sale itself would strip a court of the authority that Maryland Rule 14-305(f) expressly confers. Section (f) provides that a court "shall ratify the sale if . . . the court is satisfied that the sale was fairly and properly made." Md. R. 14-305(f). Maryland Rule 14-305(f) also provides that if the court is not satisfied that the sale was fairly and properly made, the court may enter "any order that it deems appropriate." "Fairly" means acting "in a proper or legal manner" and "in accordance with what is right or just." *Fairly*, Merriam-Webster Dictionary (Merriam-Webster, Inc. 2026), <u>available at</u> https://www.merriam-webster.com/dictionary/fairly [https://perma.cc/XFD5-AHHS]; *Fairly*, Oxford English Dictionary (Oxford Univ. Press 2026), <u>available at</u> https://www.oed.com/dictionary/fairly_adv?tab=meaning_and_use [https://perma.cc/2MS6-Y3CR]. "Properly" means acting "in an acceptable or suitable way" or "correctly" and "rightly." *Properly*, Merriam-Webster Dictionary (Merriam-Webster, Inc. 2026), <u>available at</u> https://www.merriam-webster.com/dictionary/properly [https://perma.cc/4E2M-N5MU]; *Fairly*, Oxford English Dictionary (Oxford Univ. Press

2026), <u>available at</u> https://www.oed.com/dictionary/properly_adv?tab=meaning_ and_use#28230856 [https://perma.cc/DM8Y-VF3R]. The Rule's text contains no modifiers limiting "fairly" and "properly," nor does the Rule include any other language restricting a court's obligation to determine whether a sale was "fairly" and "properly" made to an inquiry concerning "problem[s] with the sale itself." Md. R. 14-305(f); Maj. Slip Op. at 15.

Read plainly, section (f) requires a court to determine whether a sale was fairly and properly made by considering substantive irregularities. Restricting the "fairly" and "properly" inquiry to considerations involving problems with the sale itself would mean that section (f) adds nothing beyond verification that procedural steps were followed, allowing a court to ratify a sale that is unjust and not in accordance with what is right. Such a reading would render superfluous section (f)'s requirement that a court independently assess the fairness and propriety of a sale, and its authorization that in the event the court is not satisfied that a sale meets this standard, it may enter any order it deems appropriate. Section (f) unambiguously confirms that "irregularity" in subsection (e)(1) is not limited to irregularities involving "problem[s] with the sale itself." Maj. Slip Op. at 15.

## II. Rules History

Although the analysis could end here because the plain language of Maryland Rule 14-305 unambiguously establishes that "irregularity" is not limited to irregularities in the process of the sale, it would be remiss not to point out that the history of the Rule also supports this conclusion. <u>See Adelakun</u>, 491 Md. at 25-26, 338 A.3d at 628-29 (We noted

that the statute's legislative history supported the conclusion drawn from the statute's plain language that the meaning of the phrase is unambiguous.).

In 1996, when drafting what is now subsection (e)(1), the Rules Committee incorporated language from the exceptions procedures in the 1996 versions of Maryland Rules 2-541 and 2-543, which govern approval of recommendations and reports of magistrates and auditors, respectively. See Standing Comm. on Rules of Prac. and Proc., *March 15, 1996, Meeting Minutes* 56 (1996). In each of these Rules, the relevant language provides that "[e]xceptions . . . shall set forth *the asserted error* with particularity." Md. R. 2-541(h)(1) (1996) (emphasis added); Md. R. 2-543(g)(1) (1996) (emphasis added). The word "error" means "something produced by mistake" or "something incorrectly done through ignorance or inadvertence; a mistake." *Error*, Merriam-Webster Dictionary (Merriam-Webster, Inc. 2026), available at, https://www.merriam-webster.com/ dictionary/error [https://perma.cc/3S3H-9S6U]; *Error*, Oxford English Dictionary (Oxford Univ. Press 2026), available at https://www.oed.com/dictionary/ error_n?tab=meaning_and_use [https://perma.cc/7JJ&-JHD6]. Errors are not conceptually distinct from irregularities: they both arise from mistakes and something that has not been done properly, whereas irregularities involving "problems with the sale itself" might be cabined to deviations from usual procedure. *Error*, Merriam-Webster, *supra*; *Error*, Oxford English Dictionary, *supra*.

Moreover, Maryland Rules 2-541 and 2-543 serve a purpose similar to Maryland Rule 14-305; the former govern the circuit court's approval of recommendations/reports of magistrates and auditors, and the latter governs, in part, the court's approval or ratification

of a sheriff's sale. Md. R. 2-541; Md. R. 2-543; Md. R. 2-644(d) (stating that "[t]he procedure following [a sheriff's] sale of an interest in real property shall be as prescribed by Rule 14-305"); Md. R. 3-644(d) (same). Because the drafters of Maryland Rule 14-305 relied on language from Maryland Rules 2-541 and 2-543, which concerns exceptions setting forth errors with particularity—which is conceptually the same as exceptions setting forth "irregularities"—there is no basis to conclude that this reliance evinces an intent on the part of the Rules Committee or this Court to promulgate a rule limiting the scope of exceptions setting forth an alleged irregularity under subsection (e)(1) to only those setting forth irregularities related to "problem[s] with the sale itself." Maj. Slip Op. at 15.

When drafting the language for exceptions in subsection (e)(1), the Rules Committee looked to "the law of filing exceptions . . . from case law," Standing Comm. on Rules of Prac. and Proc., *supra*, at 56-57, which with respect to the recommendations of an auditor or a magistrate permitted parties to file substantive exceptions. In case law, parties asserted, through exceptions, errors regarding substantive matters including, among other things, (1) a magistrate's or auditor's factual findings; (2) a magistrate's or auditor's recommendations; and (3) a circuit court's jurisdiction. See, e.g., Kirchner v. Caughey, 326 Md. 567, 571, 606 A.2d 257, 259 (1992); Domingues v. Johnson, 323 Md. 486, 496, 593 A.2d 1133, 1137 (1991); Harris v. Melnick, 314 Md. 539, 545, 552 A.2d 38, 40 (1989); Robinson v. Brodsky, 268 Md. 12, 20, 298 A.2d 884, 888 (1973); Walker v. Haywood, 65 Md. App. 1, 12, 498 A.2d 1198, 1204 (1985).

Prior to our adoption of Maryland Rule 14-305, case law permitted the same concerning exceptions to foreclosure sales. In Kramer v. McCormick, 59 Md. App. 193,

200, 474 A.2d 1346, 1349-50 (1984), the appellee filed exceptions to the ratification of a foreclosure sale. The appellee argued that the underlying mortgage loan was unlawful because the interest rate exceeded the legal limit, thereby triggering civil penalties. See id. at 200-01, 474 A.2d at 1350. The appellee asserted that the penalties, when applied against the amount he owed under the mortgage loan, eliminated his debt entirely. See id. at 200-01, 474 A.2d at 1350. Because according to the appellee, no debt remained due, the appellee contended that the foreclosure sale should not be ratified. See id. at 200, 474 A.2d at 1349. Although the Appellate Court affirmed the judgment on other grounds, the Court agreed, unequivocally stating:

> It is apparent that equity will permit a foreclosure sale to be set aside or enjoined when there is no debt due under the mortgage or the deed of trust. . . . [I]t would be absurd as well as inequitable to permit a homeowner to lose his home for a debt that was not due. . . . If there is no debt[] due this would certainly be a reason why the sale should not be ratified.

Id. at 202-03, 474 A.2d at 1351.

Collectively, the cases referenced above and Kramer in particular demonstrate that at the time Maryland Rule 14-305(e)(1) was proposed and adopted, the scope of exceptions permitted under existing case law encompassed substantive challenges and were not limited to purely irregularities involving the actual sale. Because in developing the language for what is now subsection (e)(1) of Maryland Rule 14-305, the Rules Committee relied on the language of other Rules and case law that permitted substantive exceptions, the term "alleged irregularity" must be interpreted to permit substantive exceptions to the ratification of sheriff's sales.

**III. Application of Maryland Rule 14-305**

Applying the plain language of Maryland Rule 14-305(e)(1), as supported by its Rules history, to the circumstances of this case, where a party files an exception demonstrating that an underlying judgment was satisfied after a sheriff's sale[1] but before ratification of the sale, the party has with particularity "set forth [an] alleged irregularity." The purpose of selling levied property at a sheriff's sale is to satisfy an unsatisfied judgment. See Md. R. 2-644(a) ("The sheriff may sell so much of the debtor's interest in the property under levy as is necessary to obtain the amount of the judgment and costs of the enforcement proceedings."); Md. R. 3-644(a) (same). When a sheriff conducts a sale and the judgment debtor later satisfies the underlying judgment through payment— independent of the sale—by the judgment debtor, that satisfaction extinguishes the need for the sheriff's sale prior to its ratification and renders the sale unnecessary. As a result, the sale deviates from a normal or usual sheriff's sale, constituting an irregularity.

More importantly, in such a situation, ratifying the sale would be unfair and improper under section (f). Because a sheriff's sale is a mechanism to satisfy an unsatisfied judgment, see Md. R. 2-644(a); Md. R. 3-644(a), and, here, the judgment debtor paid the debt in full before ratification, the justification for the sale no longer exists. The ratification

---

[1]Under Maryland Rule 14-305(e)(1), exceptions to the ratification of a sale must be filed within 30 days after the date the notice of report of sale is issued under Maryland Rule 14-305(d). In this case, the Notice of Proposed Ratification was issued by the Clerk on August 30, 2024, with a response date of September 30, 2024. On September 4, 2024, the HOA filed a Line requesting that the sheriff's sale be vacated, asserting that the sale had never been ratified and that the judgment had been satisfied. And on September 16, 2024, the HOA filed a Notice of Satisfaction of the judgment.

- 10 -

of the sale would not be to satisfy a debt; instead, it would divest the judgment debtor of the property despite the absence of any remaining obligation to the judgment creditor. A court ratifying a sale under such circumstances cannot be said to act "in accordance with what is right or just[.]" *Fairly*, Merriam-Webster, *supra*. Nor can a court be satisfied that such a sale was fairly and properly made. See *Fairly*, Merriam-Webster, *supra*; *Fairly*, Oxford English Dictionary, *supra*; *Properly*, Merriam-Webster, *supra*; *Properly*, Oxford English Dictionary, *supra*; see also Md. R. 14-305(f) ("[A] court shall ratify the sale if . . . the court is satisfied that the sale was fairly and properly made.").

## IV. Case Law

In determining "what does not constitute an 'irregularity'" under Maryland Rule 14-305, the Majority purports to rely primarily on case law, which it says interprets Maryland Rule 14-305, in the context of mortgage foreclosure sales to restrict exceptions to those alleging problems with the sale itself. Maj. Slip Op. at 16 (emphasis omitted). But, that is not actually the case. In fact, the Majority relies on Goldberg v. Frick Elec. Co., Inc., 363 Md. 683, 770 A.2d 182 (2001), and its own recent decision in William L. Hallam v. New Life Evangelical Baptist Church, Inc., et al., No. 15, Sep. Term, 2025, ___ Md. ___, ___ A.3d ___, 2026 WL 1784482 (Md. June 22, 2026), two opinions of this Court that do not support the proposition that Maryland Rule 14-305 restricts borrowers to raising exceptions to the ratification of a sheriff's sale to those that set forth "problem[s] with the sale itself." Maj. Slip Op. at 15-16. In Hallam, perhaps in anticipation of the opinion in this case, in a case involving the construction of Maryland Rule 14-211(not Maryland Rule 14-305), the Majority gratuitously stated that Maryland Rule 14-305 "concerns the propriety of the

- 11 -

sale[,]" while Maryland Rule 14-211 concerns the validity of the lien. Hallam, 2026 WL 1784482, at *13. The gratuitous comment in Hallam about Maryland Rule 14-305 is not precedent for the proposition the Majority asserts in this case.

In Goldberg, 363 Md. at 702-03, 770 A.2d at 193, contrary to the Majority's reasoning that exceptions to the ratification of a sheriff's sale involve only problems with the sale itself, we held:

> The decisions of this Court in cases involving judicial and foreclosure sales makes clear that a purchaser at those sales can have a sale set aside if there was some form of misrepresentation or mistake that creates a prejudicial effect on the purchaser, or other bidders and prospective bidders and in respect to the debtor's interest as well. We see no reason why this same protection should not be provided to a purchaser at a sheriff's sale.

In reaching this conclusion, we explained that our sisters states have also considered the circumstances in which it is appropriate for a trial court to set aside a sheriff's sale and that courts have noted that "[i]f 'the totality of circumstances demonstrates that a sale has resulted in an unconscionable condition which is shocking to the conscience of the court, it is within the equitable powers of the court to remedy the condition.'" Id. at 703, 770 A.2d at 194 (quoting Gale v. Rice, 636 P.2d 1280, 1281 (Colo. App. 1981)) (citation modified). We noted that another court has stated that it appears that generally the law permits a trial court "to take a common sense approach in deciding whether or not to vacate a bid. The court takes into consideration all circumstances, such as the inadequacy of the price, the effect of procedural irregularities, inequitable conduct, evidence of mistake or misapprehension, and problems with title." Id. at 703, 770 A.2d at 194 (quoting Smith v. Fed. Land Bank of Louisville, 472 N.E.2d 1298, 1303 (Ind. Ct. App. 1985)). We observed

that yet another court has stated that "[a] sale can be set aside whenever it would be inequitable or against good conscience to permit the sale to stand." Id. at 704, 770 A.2d at 194 (quoting Fam. Sav. & Loan Ass'n v. Barkwood Landscaping Co., 286 N.W.2d 581, 587 (Wis. 1980)).

To be sure, our holdings in cases concerning the ratification of sales in the mortgage foreclosure context have espoused the sentiment that with respect to exceptions to the ratification of mortgage foreclosure sales, an "irregularity" under Maryland Rule 14-305 is limited only to "procedural irregularities at the sale." See Bates v. Cohn, 417 Md. 309, 325, 9 A.3d 846, 856 (2010); Thomas v. Nadel, 427 Md. 441, 48 A.3d 276 (2012).

However, that was not always the case. In Albert v. Hamilton, 76 Md. 304, 25 A. 341 (1892), a case we in which we applied Maryland Code, Article 66, § 9, which we have described as an "older, different, and more latitudinous version of predecessors to Rule 14-305[,]" Bates, 417 Md. at 325, 9 A.3d at 856, exceptions to mortgage foreclosure sales were not held to be limited to raising procedural irregularities. In Albert, 76 Md. at 304, 25 A. at 341, Jacob P., George W., and Charles R. Albert (collectively "Albert") filed a bill in equity against Clara Hamilton, a widow, executrix, and residuary legatee of William T. Hamilton, the deceased. Albert alleged that the decedent "by false and fraudulent representations, procured a mortgage of certain land from them, and from their mother and their brothers[.]" Id. at 304, 25 A. at 341.

Albert "filed a bill in equity . . . in the same Court" alleging that the mortgage was obtained by fraud. Id. at 304, 25 A. at 342. We held that the validity of the mortgage at issue was to be determined by the circuit court under exceptions to the ratification of the

sales. See id. at 304, 25 A. at 342. We explained that Article 66, § 9 vested within the equity court the "full power to hear and determine any objections which may be filed against the sale[,]" therefore questions of fraud ought to be presented to the circuit court to consider as exceptions to the ratification of a sale. Id. at 304, 25 A. at 343.

After our decision in Albert, however, Rule BR6 supplanted Article 66, § 9 in governing post-sale exceptions, and Rule BR6 was supplanted by Maryland Rule 14-305, which was adopted on June 5, 1996. And in 2005, in Greenbriar Condo., Phase I Council of Unit Owners, Inc. v. Brooks, 387 Md. 683, 687-88, 878 A.2d 528, 530-31 (2005), a case in which a condominium owner defaulted on monthly assessments and the condominium owner challenged the mortgage foreclosure sale by filing exceptions to the ratification of the sale, we held that an "irregularity" under Maryland Rule 14-305 is limited to "procedural irregularities at the sale" that concern the sale process itself. Until today, we had not held the same with respect to exceptions to the ratification of a sheriff's sale.

Significantly, after the adoption of Maryland Rule 14-305, the General Assembly enacted a series of laws providing important protections for homeowners facing mortgage foreclosure. In 2005, the General Assembly enacted the Protection of Homeowners in Foreclosure Act ("PHIFA"), which, among other things, prohibited mortgage foreclosure consultants from taking money or equity before the completion of services. See 2005 Md. Laws 2985-86, 3009 (Vol. IV, Ch. 509, S.B. 761).[2] In 2008, the General Assembly enacted

---

[2]The PHIFA was passed by the General Assembly in April 2005 and took effect on May 26, 2005, as an emergency matter. See 2005 Md. Laws 3009 (Vol. IV, Ch. 509, S.B. 761). PHIFA applies primarily to homeowners who are in default on their mortgage or

a foreclosure process reform bill, which constituted a major overhaul of the mortgage foreclosure process and codified the foreclosure procedures for a mortgage or deed of trust in Md. Code Ann., Real Prop. ("RP") 7-105.1. See 2008 Md. Laws 1-2, 5-11 (Vol. I, Ch. 1, S.B. 216); 2008 Md. Laws 17-18, 21-27 (Vol. I, Ch. 2, H.B. 365). Currently, RP § 7-105.1 requires lenders to send a 45-day notice of intent to foreclose before filing a foreclosure action, mandates that at least two good faith attempts at personal service of the homeowner be made, makes it so that the fastest a foreclosure can occur after a default is 135 days, and mandates more precise disclosures by lenders.[3] In 2010, the General Assembly enacted the Foreclosure Mediation Act, which allows borrowers to request mandatory mediation with lenders to identify alternatives to foreclosure and requires lenders to file documentation demonstrating that they are authorized to file an initial "Order to Docket," *i.e.,* a foreclosure action, and that the lender had conducted a loss mitigation

---

have received a notice of foreclosure, and it regulates the activities of foreclosure consultants and foreclosure purchasers.

[3]Prior to the passage of the 2008 Act, a foreclosure sale for a mortgage or deed of trust containing a power of sale or assent to decree could occur as soon as fifteen days after the filing of an order to docket. See Fiscal and Policy Note, at 5, S.B. 216, 2008 Gen. Assemb., Reg. Sess. (Md. 2008), https://mgaleg.maryland.gov/2008rs/fnotes/ bil_0006/sb0216.pdf [https://perma.cc/8M6Q-EJDV]. The action began with the filing of an order to docket in the circuit court for the county where the property was located. See id. at 4. Before the foreclosure sale could take place, the law required only that notice of the filing of the action be mailed to the homeowner, written notice of the foreclosure sale was to be mailed not earlier than thirty days and not later than ten days before the date of the sale, and notice of the sale was published in a newspaper of general circulation once a week for three successive weeks before the sale. See id. at 4-5. The homeowner was not entitled to be personally served with process, and the lender was not required to show that the notice was actually received. See id.

analysis. See 2010 Md. Laws 3290-92 (Vol. IV, Ch. 485, H.B. 472).[4] And, of course, all foreclosure actions must be initiated in the circuit court rather than the District Court.

None of the protections afforded by any of the mortgage foreclosure protection legislation apply to the sale of residential property via a sheriff's sale. For example, a civil action to recover an unpaid debt may begin with the filing of a complaint in the District Court of Maryland if the amount owed is less than $30,000, which was the circumstance in this case. See Md. Code Ann., Cts. & Jud. Proc. ("CJ") § 4-401. After obtaining a money judgment, a creditor may file a request for a notice of lien of judgment with the clerk of the court for the county of entry. See RP §§ 11B-117(b), 14-201 et seq.; Md. R. 3-641(a). The judgment creditor may request that the clerk issue a writ of execution directing the sheriff to levy upon property of the judgment debtor to satisfy the money judgment. See Md. R. 3-641(a).[5] After the writ is issued, the sheriff shall levy upon a judgment debtor's interest in real property by entering a description of the property upon a

---

[4]Currently RP § 7-105.1(a)(7) defines a loss mitigation program as:

an option in connection with a loan secured by owner-occupied residential property that:

(i) Avoids foreclosure through loan modification or other changes to existing loan terms that are intended to allow the mortgagor or grantor to stay in the property;

(ii) Avoids foreclosure through a short sale, deed in lieu of foreclosure, or other alternative that is intended to simplify the mortgagor's or grantor's relinquishment of ownership of the property; or

(iii) Lessens the harmful impact of foreclosure on the mortgagor or grantor.

[5]The writ must contain a notice advising the debtor that federal and state exemptions may be available and that there is a right to move for release of the property from the levy.

schedule and by posting a copy of the writ and the schedule in a prominent place on the property.  See Md. R. 3-642(a).

The property must be levied for only thirty days before the sale can occur.  See Md. R. 3-644(a); Md. R. 2-644(a).  The sheriff need only give "notice of the time, place and terms of the sale[,]" by posting the notice at the courthouse and publishing in a newspaper in the county where the property is located twenty days before the sale.  Md. R. 2-644(b), 3-644(b).  Under the common law, a sheriff's sale was final and valid as soon as it was made.  See Lewis v. Rippons, 282 Md. 155, 165, 383 A.2d 676, 682 (1978).  This changed in 1984 with the adoption of Maryland Rules 2-644 and 3-644.  Maryland Rules 2-644 and 3-644 made the procedure following a sheriff's' sale subject to former rule BR6—which permitted substantive challenges to the ratification of a sale.  It was Maryland Rules 2-644 and 3-644 and former rule BR6 that abrogated the common law by permitting substantive challenges to the ratification of a sheriff's sale, not Marland Rule 14-305.

Since 1996, Maryland Rule 14-305 has applied to the ratification of a sheriff's sale. There is no indication in either the plain language or the Rule's history that the language of Maryland Rule 14-305(e)(1) was intended to limit exceptions to the ratification of a sheriff's sale, or any sale for that matter, to setting forth "irregularities" involving the sale of the property itself.  With the exception of this case, there is no case law directly addressing the interpretation of Maryland Rule 14-305(e)(1)'s "alleged irregularity" language as applied to a sheriff's sale.

Oddly, the Majority holds that the purchaser of property at a sheriff's sale obtains an "inchoate equitable interest" in the property and, as a result, has "the right to the

ratification process set forth in the Maryland Rules." Maj. Slip Op. at 20. Although this terminology has not been used in our case law to describe a purchaser's interest in property after a sheriff's sale, potentially, by virtue of a sheriff's sale, a purchaser may acquire an inchoate equitable interest in the property. It is difficult to conceive, though, that a purchaser of property at a sheriff's sale would have an inchoate equitable interest in the property when the debtor satisfies the judgment that necessitated the sale, before the sale is ratified.[6] At any rate, the Majority's pronouncement that "[a] purchaser's inchoate equitable interest confers an important right upon the purchaser: the right to the ratification process set forth in the Maryland Rules" is meaningless. Maj. Slip Op. at 20. Maryland Rule 3-644(d) states that "[t]he procedure following the sale of an interest in real property shall be as prescribed by Rule 14-305." In other words, Maryland Rule 3-644(d) requires that after a sheriff's sale both a debtor and purchaser follow the provisions of Maryland

---

[6]I join Justice Killough's dissent in which he concludes, among other things, that because a debtor's satisfaction of a judgment after a sheriff's sale eliminates the sheriff's levy, satisfying the judgment should not be considered an exception to the ratification of the sale. See J. Killough Dissenting Slip Op. at 23. The point is not incompatible with my view that a debtor is not precluded from raising as an exception to the ratification of a sheriff's sale that the underlying judgment was satisfied after the sale. Consistent with the plain language of Maryland Rule 14-305 and our case law, where a debtor raises as an exception the satisfaction of the judgment, the exception should not be overruled on the ground that exceptions to sheriff's sales are limited to "problem[s] with the sale itself." Maj. Slip Op. at 15.

I am not troubled by Justice Killough's use of information, such as information concerning the value of the property and the existence of a mortgage, that is not in the record. In his dissenting opinion, Justice Killough relies upon information from public records maintained by government agencies, which any court could easily take judicial notice of.

Rule 14-305. It is as simple as that. Maryland Rule 14-305 does not set forth a ratification process that is bestowed upon a purchaser by an undefined inchoate equitable right.

What is plainly objectionable is the Majority's next conclusion that permitting a judgment-debtor's satisfaction of a judgment to void a sale would violate a purchaser's "right to the ratification process set forth in the Maryland Rules." Maj. Slip Op. at 20. The Majority states:

> Allowing a judgment-debtor's post-sale satisfaction of the judgment to void a sheriff's sale would violate that right. As discussed, a judgment-debtor or other interested party may file exceptions to the sale based on alleged irregularities, including a complaint that the sale price is so insufficient that the sale should be overturned. However, if the court discerns no irregularities in the sale and therefore overrules any exceptions that have been filed, the purchaser has the right to have the sale ratified and to receive complete legal title to the judgment-debtor's interest in the property.

Maj. Slip. Op at 20. No precedent of this Court commands such a result and the Majority's conclusion is the product of circular reasoning. The Majority concludes that allowing a borrower to satisfy a judgment post sale would violate a purchaser's "right to the ratification process set forth in the Maryland Rules[,]" and that absent irregularities in the sale, "the purchaser has the right to have the sale ratified[.]" Maj. Slip. Op at 20. It is true that a purchaser has a right to pursue the ratification process set forth in the Maryland Rules but permitting a borrower to satisfy a judgment post sale would in no way deprive a purchaser of exercising that right. The question before the Court concerns the nature of the challenges, *i.e.*, exceptions, that may be raised in the ratification process. Concluding that a borrower may allege as an exception that a sale was not fairly and properly made because the judgment debt has been satisfied does not deprive a purchaser of the right to

- 19 -

the ratification process and is consistent with the plain language and history of Maryland Rule 14-305. Although it is unclear what the Majority perceives to be the basis of the purchaser's right to have a sheriff's sale ratified, no statute or Maryland Rule confers upon the purchaser of property at a sheriff's sale a right to the ratification of the sale.[7]

More concerning, to justify its holding, the Majority states that allowing a borrower to satisfy a judgment after a sheriff's sale and before ratification "would devalue a purchaser's inchoate interest significantly, likely resulting in fewer bids at sheriff's sales." Maj. Slip Op. at 21. Taking a quote out of context from a mortgage foreclosure case, Bates, 417 Md. at 329-30, 9 A.3d at 859, to bootstrap this reasoning, the Majority concludes that "society has an interest in encouraging prospective purchasers to bid at sheriff's sales. Respondents' approach would undermine that interest." Maj. Slip Op. at 21. The problem with transposing the reasoning from a mortgage foreclosure sale to a sheriff's sale is obvious and multi-fold. In mortgage foreclosure cases, borrowers are afforded a myriad of statutory protections before a foreclosure sale occurs and sales are likely to occur where there is no realistic possibility that the borrower can maintain the mortgage loan. In sheriff's sales, there are no statutory protections such as mediation to explore loan modification, loss mitigation application, furloughed employee pauses, service by mail, etc. Moreover, with sheriff's sales, the defaults and subsequent judgments may involve

_____

[7]The Majority's conclusion appears to conflate the concept of an inchoate equitable interest with that of a vested right. It appears that the Majority is actually proclaiming that a purchaser of property at a sheriff's sale has an inchoate equitable right that entitles it to ratification of a sheriff's sale. This is a position that even Petitioner did not advance. Although Petitioner contended that it had a "vested right" to ratification of the sale, it did not contend that an "inchoate equitable interest" was the equivalent of such a right.

minuscule amounts. In my view, society has an interest in seeing that homeowners are not unjustly deprived of their homes for minor debts. This is the very purpose of the statutory protections provided by the General Assembly to homeowners in mortgage foreclosure sales.

Given the substantial laws affording protection to homeowners during the mortgage foreclosure process enacted after our adoption of Maryland Rule 14-305, the lack of case law addressing ratification of a sheriff's sale under the Rule, and the plain language and history of the Rule, I would not hold that mortgage foreclosure case law interpreting Maryland Rule 14-305(e)(1) governs exceptions to the ratification of sheriff's sales and limits such exceptions to those setting forth irregularities with the sale itself.

For all of the reasons discussed above, I would hold that the circuit court properly affirmed the denial of the purchaser's motions to strike the line withdrawing the sheriff's sale and to strike the notice of satisfaction of the debt, and affirm the judgment of the circuit court. As such, respectfully, I dissent.

Justice Eaves and Justice Killough have authorized me to state that they join in this opinion.

Circuit Court for Prince George's County
Case No.: C-16-CV-24-006056
Argued: November 4, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 24

September Term, 2025

_____

BALTIMORE XV PROPERTIES LLC

v.

NEWSTEPS' CHOICE NORTH
HOMEOWNERS ASSOCIATION, INC., ET AL.

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Dissenting Opinion by Killough, J., which
Watts and Eaves, JJ., join.

_____

Filed: July 14, 2026

The Majority's decision in this case may result in Wendy Carrington losing her home in a sheriff's sale—a home worth nearly half a million dollars according to State property tax records[1]—over a judgment in the amount of $3,289.21 for unpaid HOA assessments that she could not pay while undergoing chemotherapy and $493.38 in attorney fees. The Majority remands to the District Court for Ms. Carrington to file exceptions, which according to the Majority, must be limited to alleging "a problem with the sale itself." Maj. Op. at 15. Unless the court finds a problem that warrants vacating the sale—which should never have survived the satisfaction of the judgment—the result is foreordained. Ms. Carrington will lose her home despite having paid the judgment in full, with interest and fees, before ratification. She may lose her home despite the judgment creditor itself filing to vacate the sale and entering satisfaction of the judgment. She may lose her

---

[1] According to records of the Maryland State Department of Assessments and Taxation (SDAT), the property has an assessed value of $458,600 as of January 1, 2026, and Ms. Carrington has owned it since February 2, 2001—more than twenty-five years. Md. State Dep't of Assessments & Taxation, Real Property Search (last visited May 2026). The Court may take judicial notice of SDAT records as public records maintained by a state agency whose accuracy cannot reasonably be questioned. Md. Rule 5-201(b)(2). Maryland law requires SDAT to assess real property at "full cash value," Md. Code, Tax-Prop. § 8-101(b), making the assessed figure a reasonable proxy for market value—and, given the triennial reassessment cycle, likely a conservative one.

A deed indicates that Ms. Carrington purchased the house on January 24, 2001, for $192,000. According to information in the record, Ms. Carrington was still paying a mortgage on the property at the time of the sale. While the precise mortgage balance at the time of the Sheriff's sale is not specified in the record, the property's significant appreciation over twenty-five years—from a $192,000 purchase price to a $458,600 SDAT assessment—supports the inference that Ms. Carrington had likely built a vital stake in the property over her 25 years of ownership.

home despite being current on her mortgage. She may lose her home despite both the District Court and the Circuit Court for Prince George's County ruling against the purchaser and closing the case. That Ms. Carrington may lose her home and must continue this fight in court—after paying every cent she owed—is the injustice this dissent addresses.

The Majority's recitation of the procedural history in this case glosses over its most consequential fact: Ms. Carrington paid the judgment in full within approximately thirty days of the sheriff's sale. Counsel for the HOA acknowledged below that "the payments came in and eventually satisfied the judgment," and Ms. Carrington's statement that she paid "within a month from the sale date" was undisputed. Significantly, on March 21, 2025, at the time of the de novo hearing on the appeal in the circuit court, counsel for the HOA advised that "Baltimore XV has not paid any HOA fees since the sale date and so their argument that they have an interest in the property . . . there's not, to my knowledge, any indication of any interest in trying to protect the property that way." The formal entry of satisfaction of the judgment on September 16, 2024, merely confirmed on the docket a payment Ms. Carrington had completed nearly a year earlier. That timing is dispositive.

Under Rule 3-643(a), "[p]roperty is released from a levy when the judgment has been entered as satisfied and the costs of the enforcement proceedings have been paid." Here, the HOA filed a Notice of Satisfaction on September 16, 2024. The clerk entered the judgment as satisfied on the docket. At that moment, Ms. Carrington's home was released from levy pursuant to Rule 3-643(a). No motion was necessary. No court order was required. The Rule is mandatory and self-executing upon entry of satisfaction. The

2

levy is the foundation of the sale: the sheriff holds the property under the levy, and ratification transfers only what the levy captured. The sale, without satisfaction of the judgment, did not release the levy. Once Ms. Carrington's payment dissolved the levy, there was nothing left to ratify. The sale should have been treated as a nullity and the property released.

The Majority's contrary proposition is that ratification of a sheriff's sale is concerned exclusively with whether the auction was fairly conducted, and nothing else. *See* Maj. Op. at 15–17. Reading Rule 3-644 together with Rule 14-305, the Majority concludes that those Rules foreclose any post-sale[2] remedy for a judgment debtor who satisfies the underlying debt. But that conclusion finds no support in the text of either Rule. Rule 14-305 governs—notice, publication, the timeline for exceptions, and the standard for court approval. The Majority cannot point to a single provision that renders satisfaction of the judgment irrelevant to ratification, because no such provision exists. By reducing the court's role to that of an auction referee, the Majority ignores that a sheriff's power to sell derives entirely from an active judgment. Satisfy the judgment before ratification, and the legal predicate for the sale is gone.

The Majority shrugs at Ms. Carrington's satisfaction of the judgment within 30 days of the sheriff's sale and at the unconscionability of a $6,000 sale price for a $458,600 home.

---

[2] The Rules contain no "pre-sale" or "post-sale" period; those labels are borrowed from foreclosure's statutory redemption framework, which the sheriff's sale lacks. *See infra* Section III.B. The right to satisfy the judgment runs continuously from the date the judgment is entered until ratification and, as the Rules clearly state, nothing in Rule 3-644 or Rule 14-305 gives the sheriff's auction any legal significance that would terminate a debtor's right of redemption.

Its answer is that Ms. Carrington may file exceptions to the sheriff's sale on remand, aimed at challenging irregularities with the sale including "an unconscionably low sale price[.]" Maj. Op. at 15. But the Majority's framing of the problem reveals how far it has strayed from the Maryland Rules. The Majority treats Ms. Carrington's full satisfaction of the judgment as though it were just an irregularity to be weighed under Rule 14-305(e)—on par with a defective advertisement or an improperly noticed auction. It is not. Satisfaction of the underlying debt is not an irregularity in the sale. Satisfaction of the judgment eliminates the reason for sale. Maryland courts have long recognized the difference. In *Kramer v. McCormick*, 59 Md. App. 193, 202–03 (1984), the Appellate Court stated: "It is apparent that equity will permit a foreclosure sale to be set aside or enjoined when there is no debt due under the mortgage or the deed of trust . . . [I]t would be absurd as well as inequitable to permit a homeowner to lose his home for a debt that was not due . . . If there is no debt[] due[,] this would certainly be a reason why the sale should not be ratified." *Kramer* was decided before the adoption of Rule 14-305, and its reasoning was part of the case law the Rules Committee relied upon when drafting the exceptions language of subsection (e)(1). *See* Watts, J., dissenting, at 9.

The Majority reaches its result by ignoring Rule 3-643(a). In its opinion, it mentions the Rule only briefly, just enough to misread it. Maj Op. at 18-19. The Majority adds an extra-textual limitation to the Rule, asserting that a debtor may *only* satisfy the judgment by paying the creditor or the sheriff "before the sale occurs[.]" Maj. Op. at 17-18. One searches the text of Rule 3-643(a) in vain for the words "before the sale occurs." The Rule states, plainly and without qualification, that "[p]roperty is released from a levy when the

4

judgment has been entered as satisfied and the costs of the enforcement proceedings have been paid." *See* Rule 3-643(a). It imposes no arbitrary expiration date tied to the auctioneer's gavel.

It is hard to ignore Rule 3-643(a) when that Rule is central to this case. Yet, the Majority avoids any substantive analysis of the Rule, implying without expressly concluding that Respondent waived that argument. Maj. Op. at 19, n. 9 ("Respondents do not argue that Rule 3-643(a) allows a judgment-debtor to obtain release of a levy by providing cash or other property to a judgment-creditor sufficient to satisfy the judgment after the sale but before ratification."). I do not agree that Ms. Carrington waived anything. As she explained to the court: "I don't see how they could take [the house] when I paid the money before they ratified it or whatever a year later. This was settled. Paid within a month from the sale date. So I don't see how—they didn't have it ratified, they didn't have anything done. I did what I had to do to keep my house." The core thrust of the Respondent's entire argument on appeal was that because the judgment had been paid before ratification, the court could not force the transfer of Ms. Carrington's home.

The circularity of the Majority's logic is laid bare in footnote 8 of the opinion. There, the Majority concedes that a debtor may satisfy the judgment after the sale but before ratification. Maj. Op. at 19, n.8. Yet, in the same breath, the Majority commands that the sale must be upheld anyway, comforting the homeowner with the promise that, upon ratification, she will be entitled to receive back the portion of the sale proceeds that would have gone to the creditor. This represents a deeply disturbing inequity. Even after the debt no longer exists, the Majority would have the sale ratified, forcing Ms. Carrington from

5

her home, only to hand her back a check that likely represents mere pennies on the dollar with respect to her lost asset. As explained, *infra* at 10-31, the law neither demands such a pointless outcome nor authorizes such a loss of home equity for people with debt and limited means to manage it.

Contrary to the Majority's reading, Rule 14-305(e) is not the exclusive mechanism governing sheriff's sales. It governs exceptions to the ratification of the sale. Rule 3-643(a) governs something different: it mandates the release of property from levy upon satisfaction of the judgment. Two rules govern this situation, and the Majority has locked one door and ignored the other.

Consider a scenario in which the Majority's new holding now governs, if the General Assembly fails to abrogate today's opinion. A marine scientist of twenty years— who studied the effects of a warming ocean on the long-term sustainability of regional fisheries—is laid off from the federal workforce in a round of budget cuts. A single father raising three children in coastal Maryland, he pieces together odd jobs to keep current on his mortgage and keep his family afloat. He falls behind on a single recurring obligation: his $2,000 annual homeowners' association fee. Notices arrive; consumed by the work of staying afloat, he sets them aside. A default judgment is entered and a notice of a sheriff's sale is posted at the courthouse. Still nothing visible happens, so he keeps scraping by and begins making payments toward the judgment, which the HOA accepts. On May 1, his home—worth $400,000—is sold at a sheriff's auction for $4,000. The next day the sheriff files the report of sale, and the clerk's notice issues. On July 1, having finally grasped what is happening, the homeowner raids the 529 account he had set aside for his children's

6

education and pays the balance of the judgment and all of the sheriff's sale fees before the court ratifies the sale. The HOA files a line confirming satisfaction the very next day. The debt that started it all is gone, paid to the last dollar.

Is his home saved? Not under the Majority's ruling today. Watch how the Majority's new rule operates: the HOA, the actual judgment creditor, files a line confirming that the judgment is satisfied, expecting, as any creditor would, that payment ends the matter. But the developer who bought the home for $4,000 and who is planning a $1 million rebuild in coastal Maryland, moves to strike the notice of satisfaction and objects to vacating the sale. It argues that under today's opinion the satisfaction of the judgment is legally irrelevant: the sale occurred on May 1, the thirty-day exceptions window the Majority has fashioned ran from the clerk's notice and has long since closed, and the homeowner therefore has no procedural vehicle left—he cannot file exceptions, cannot challenge the price, cannot do anything at all. On the developer's reading of the Majority opinion, the court is not merely permitted to ratify; it is *required* to. Satisfaction of the judgment by the homeowner is no defense, because the Majority has held that satisfaction after a sale does not undo it. The homeowner stands before the court having paid every dollar he owed, with the very creditor he owed it to agreeing the debt is gone, and the court—bound by today's holding—ratifies the sale anyway and orders him out of his house. The developer takes title to a $400,000 home (potentially subject to a remaining

7

mortgage balance or not), on the way to a $1 million luxury build, for $4,000. The marine scientist and his children are evicted.[3]

That cannot be right. By holding that a judgment debtor who fully satisfies the underlying judgment before ratification of a sheriff's sale cannot reclaim her home, the Majority transforms an enforcement mechanism—designed to compel payment of judgments—into a vehicle for windfalls for speculators of distressed assets. It strips a homeowner of property worth many times the amount of the debt, rewards and encourages opportunistic bidders, and does so without any basis in the text of the governing Rules or the equitable principles that have long informed Maryland law. It is immaterial whether a specific homeowner possesses substantial equity in the home or holds a heavily encumbered mortgage. The Majority's rule applies indiscriminately across the spectrum of property ownership.

The holding this Court announces today has no textual home in the Rules and no precedential anchor in our cases. Most troubling, the Majority invents a redemption period for sheriff execution sales that no statute creates, no Rule establishes, and no case recognizes—and then fixed its expiration at the fall of the gavel. The Majority's decision has serious policy ramifications. If that is the balance this Court wishes to strike, so be it. But I reject the suggestion that our hands are somehow tied. The procedural framework the Majority invents—inchoate equitable interests surviving satisfaction, a redemption-

---

[3] Like Ms. Carrington, the laid off marine scientist has lost not only his and his children's home but also any equity that the homeowner has spent years building in the property.

period expiring at the auction, a gavel-fall terminus on the debtor's rights—appears nowhere in Rules 3-641 through 3-644.  The Majority has assembled this framework piece by piece from foreclosure doctrine and common law, announced it as though it were always embedded in the Rules, and used it to override the Rules plain-text mandate: *property is released from levy when the judgment is satisfied.*

I would affirm the circuit court and hold that satisfaction of the judgment prior to ratification vacates the levy and the sale as a matter of law.

## I.    THE RULES ARE CLEAR: SATISFACTION BEFORE RATIFICATION VACATES THE SALE.

Rule 3-643(a) provides that property is released from levy when the judgment is entered as satisfied and enforcement costs are paid.  This is not a discretionary remedy.  The Rule is mandatory.  And it contains no temporal limitation confining its operation to only the period before the sheriff's sale occurs.  There is no qualifying language stating that "a judgment-debtor may satisfy the judgment before the sale occurs by providing payment to the judgment-creditor."  Maj. Op. at 18.  That is language the Majority grafts onto Rule 3-643(a). Instead, the levy remains in effect until the judgment is paid, or the sheriff's sale is ratified by the court and the deed is delivered.  If the judgment is satisfied before that process concludes, the levy's legal predicate is extinguished, and the property must be released.  Maryland Rule 3-644(d) is likewise plain: "[a]fter ratification of the sale by the court, the sheriff shall execute and deliver to the purchaser a deed conveying the debtor's interest in the property[.]" These two provisions, read together, completely answer the question presented.

9

It is undisputed that the judgment here was satisfied before ratification and that the sale was never ratified. Any inchoate equitable interest Baltimore XV acquired by its $6,000 bid dissolved when the judgment was satisfied. Under Rule 3-644(d), no title or vested interest can pass to a purchaser until the court ratifies the sale; the sheriff's authority to sell exists only so long as the writ of execution is supported by an unsatisfied judgment. Satisfaction of the judgment before ratification therefore removes the writ's foundation and vacates the sale as a matter of law. *See Goldberg v. Frick Electric Co., Inc.*, 363 Md. 683, 693 (2001) (citing *Fowler v. Fitzgerald*, 82 Md. App. 166, 174 (1990)) ("In making ordinary execution sales, . . . the sheriff or marshal acts as the ministerial officer of the law . . . *His authority to sell rests on the law and on the writ*[.]" (emphasis added)).

Under the current Maryland Rules, title does not pass at the sale but only after the court ratifies the sale and the sheriff executes and delivers a deed to the purchaser. *See* Rule 3-644(d). That is a change from the common law. It was adopted in 1984 and recognized in *Fowler*, 82 Md. App. at 175, which explained that Rule 2-644—the parallel circuit court provision—displaced the common-law rule under which title transferred immediately at the sale. The operative language is the same in both: "[a]fter ratification of the sale by the court, the sheriff shall execute and deliver to the purchaser a deed conveying the debtor's interest in the property." Rule 3-644(d). The phrase "after ratification" is not incidental. It is structural. It makes a sheriff's sale conditional on judicial approval, and it provides that until that approval is granted, the purchaser obtains neither legal title nor an equitable interest sufficient to support possession. What the purchaser holds in the interim is, at best, an inchoate equitable interest. *Cf. Empire Props., LLC v. Hardy*, 386 Md. 628, 650 (2005)

10

(holding that even a purchaser at a mortgage foreclosure sale may not obtain possession before ratification). Here, the judgment was satisfied before ratification—and therefore before any deed could pass. And a sheriff's sale differs from a foreclosure in a way that matters here. A foreclosure purchaser's interest is secured by an *in rem* lien on the property itself; a sheriff's sale enforces only a money judgment, and an inchoate interest that depends on the continued vitality of that judgment cannot survive the judgment's satisfaction.

There is no "gap" in the Rules to be filled by resurrecting pre-Rule common law. Maj. Op. at 17. Rules 3-643 and 3-644 read together answer the question: a sheriff's sale is conditional on ratification and is not self-executing. To treat satisfaction of the judgment as merely an "irregularity" would be to transform ratification into a formality and revive a self-executing model the Rules displaced.

## II. A WRIT OF EXECUTION CANNOT OUTLIVE THE JUDGMENT IT ENFORCES.

A writ of execution is not an independent source of authority. It exists solely to enforce an outstanding judgment. This is elementary and it is codified in this Court's own Rules releasing the property from levy when the judgment is satisfied. *See* Rule 3-643(a). Thus, the Rules themselves declare that when the judgment dies, the levy—and the sheriff's authority to proceed—dies with it. The writ in this case states its own purpose on its face: "Please issue a Writ of Execution directing the sheriff to levy upon property of Judgment Debtor to satisfy the judgment." *See also* 13 M.L.E. Judgments § 170 ("the purpose of the sale is to accomplish the satisfaction of the judgment."). And as *Fowler* confirms, the

11

sheriff's "authority to sell rests on the law and on the writ"—not on any independent power. 82 Md. App. at 174. When the judgment is satisfied, the writ's stated purpose is accomplished; its authority is exhausted; and the sheriff's power to proceed terminates.

This Court has said as much. In *Goldberg v. Frick Electric Co.*, the Court recognized that "the only reason for a sale by the sheriff under the writ of *fieri facias*[4] is to accomplish a satisfaction of the judgment[.]" 363 Md. at 696 (quoting *Buckeye Dev. Corp. v. Brown & Shilling, Inc.*, 243 Md. 224, 229–30 (1966)). The *only* reason. When the judgment has been satisfied, that reason for the sale no longer exists. The same opinion emphasized that the sheriff "is not merely the servant of the creditor and that the debtor may have interests which he has a duty to protect." *Id.* The Majority's rule eliminates any such protection. It converts the sheriff's sale from a mechanism designed to satisfy a debt into a one-way conveyance that proceeds regardless of whether the debt exists.

What the Majority authorizes here is truly remarkable: the ratification of a sheriff's sale to enforce a judgment *that has been paid*. And the Majority offers no limiting principle to explain why a court should ratify a sale whose stated purpose—the satisfaction of the judgment—has already been accomplished by the debtor's own payment. The Majority treats satisfaction as though it were merely another procedural "objection" that must be shoehorned into the "irregularity" framework of Rule 14-305(e), which the Majority has, in effect, limited to procedural irregularities. But satisfaction is not an irregularity in the

---

[4] *Fieri facias* is a writ of execution that directs a marshal or sheriff to seize and sell a judgment debtor's property to satisfy a money judgement. *Fieri facias*, Black Law's Dictionary (12th ed. 2024).

12

sale's procedures. It is something more fundamental: the extinguishment of the debt that authorized the sale in the first place. The writ commanded the sheriff to levy on Ms. Carrington's property "to satisfy the judgment." She satisfied it. There is nothing left to enforce. But the Majority's holding zombifies the judgment—a judgment that has been entered satisfied, that the creditor has acknowledged as satisfied, and that the docket reflects as satisfied, nonetheless retains the power to sustain a levy, support a sale, and strip a homeowner of her property. The zombie judgment is dead on the docket but alive in the Majority's opinion.[5] No amount of payment can kill it, says the Majority.

The procedural posture of this case demonstrates the point. After the sale on August 29, 2023, the sheriff's role was not finished. The sheriff still had duties to perform: hold the $6,000 in sale proceeds, and—if the court ratified the sale—deliver a deed and place the purchaser in possession. Rule 3-644(d). Each of these remaining duties derives from the writ. The writ derives from the judgment. On September 16, 2024, the judgment was entered satisfied. Ms. Carrington had paid the judgment through the HOA's law firm. The HOA filed a line stating, "Please vacate the Sheriff's sale held on 8/30/2023 and filed on 11/29/2023 and disburse deposit to the 3rd party purchaser as the above reference judgment has been satisfied[,]" as well as a Notice of Satisfaction. At that moment, the sheriff's

---

[5] Chief Justice Fader states in his concurrence that because Ms. Carrington paid her debt, "there will be no basis to conduct another sale." Fader, C.J., concurring at 4. I agree, but under that logic there is also no basis to complete the first sale. A satisfied judgment bars a second sale only because satisfaction extinguishes the writ's authority to compel the transfer of property—and that authority was just as dead before ratification of the first sale as it would be before a second. If the satisfied judgment cannot support conducting a sale, it cannot support completing one.

13

authority to proceed terminated. There was no judgment to enforce; no writ to execute; and no legal basis on which to deliver a deed. The sheriff was left holding $6,000 with no authority to do anything except return it to Baltimore XV. The District Court recognized it. The circuit court recognized it. The Majority now orders the sheriff to complete a conveyance for which no ministerial authority remains.

This Court's holding raises a question the Majority gives only a cursory answer to: what happens next? According to the Majority, on remand, the District Court must ratify the sale unless there is an "irregularity."[6] Maj. Op. at 15. But before it can do so, someone must explain what that ratification looks like as a procedural matter. The sheriff is holding the nominal auction proceeds. The underlying judgment, however, has already been entered as satisfied on the docket, and the HOA has filed its Notice of Satisfaction. Ms. Carrington's money is already in the creditor's hands.

The Majority's answer to this procedural dilemma is structurally unworkable and fails to save the home. The Majority states that upon ratification, Ms. Carrington will simply receive back the share of the sale proceeds that otherwise would have gone to the creditor. *See* Maj. Op. at 19 n. 8, 22. The vehicle for this remedy is supposedly Rule 3-

---

[6] The Majority's remand direction does not specify how the District Court is to proceed if it declines to ratify—whether it should vacate the sale outright or take some other action. *Cf.* Md. Rule 14-305(f) (court must find a sale "fairly and properly made" before ratifying). It is difficult to see how a sale conducted to enforce a judgment that no longer exists could ever be judicially found to have been "fairly and properly made."

14

644(f).[7] Maj. Op. at 8, 22. But Rule 3-644(f) mandates a strict list of priorities: expenses, then the judgment creditor "in satisfaction of the amount owed" and only *then* the debtor as surplus. The rule contains absolutely no provision authorizing a court to redirect a creditor's share to a debtor when the judgment has been separately satisfied. The redistribution remedy the Majority invents has no support in any statute, rule, or case. Neither the General Assembly nor this Court ever intended for a sheriff's sale to be ratified after a debtor has fully extinguished the underlying debt.

More fundamentally, the Majority's holding conflates the return of nominal auction proceeds with true property equity. Under this newly minted rule, a homeowner who fully satisfies an underlying debt prior to ratification is forced to permanently forfeit their primary asset to a third-party speculator in exchange for a meager check representing the remaining auction proceeds. The law does not command this Court to preside over such an unconscionable destruction of equity when the underlying judgment has already been satisfied in full.

But focusing on the value of Ms. Carrington's home or her equity therein understates the injury. A homeowner in this position is not merely losing a balance sheet asset; they are losing their hard-earned physical shelter—the foundation of familial stability

---

[7] Maryland Rule 3-644(f) provides: "The sheriff may withdraw from the proceeds of the sale all appropriate unpaid sheriff's expenses and fees incident to the enforcement proceedings. Unless otherwise ordered by the court, the sheriff shall distribute the balance of the proceeds of the sale, first to the judgment creditor in satisfaction of the amount owed under the judgment plus costs of the enforcement proceedings advanced by the creditor, and then, to the judgment debtor."

and financial security. No distribution of nominal auction proceeds assuages that loss. Crucially, the Majority's holding contains no limiting principle. The rule announced today applies with equal force regardless of a home's value, the size of the mortgage, or the insignificance of the underlying debt. It applies to a minor delinquency of a homeowner's association assessment just as it does to any small-claims judgment. The Majority offers no floor, no threshold, and no proportionality requirement—nothing to prevent a bidder from acquiring a family's home for a nominal bid. The rule is absolute, and it is absolutely indifferent to the magnitude of what is taken.

The Majority's offer of a price inadequacy exception does not resolve the problem its decision has created. Under *McCartney*, a court will set aside a sale where the price is "so grossly inadequate as to shock the conscience of the court" or where there are "slight circumstances of unfairness in addition to great inadequateness of price[.]" *McCartney v. Frost*, 282 Md. 631, 639 (1978). That a sale price of $6,000 for a home valued at $458,600 is "so grossly inadequate as to shock the conscience of the court" seems axiomatic—but it is a question the Majority has left entirely to the District Court. If the court sustains the exception, the sale is vacated: Ms. Carrington keeps her home, and Baltimore XV recovers its $6,000. That would be a just result. But the Majority does not say that result is required under these facts. And if the court overrules Ms. Carrington's exception—concluding, as courts sometimes do, that a low price at a public auction does not itself shock the conscience—the sale is ratified, and Ms. Carrington loses her home. The outcome of this litigation, after years of proceedings and two favorable rulings below, now turns on a discretionary legal conclusion the Majority has declined to reach. The outcome, on

16

remand, may spawn a second lawsuit, on a new and uncertain ground, substituted for the remedy the Rules already gave Ms. Carrington: release of the levy upon satisfaction of the judgment.

### III. THE MAJORITY OPINION RESTS ON THREE PROPOSITIONS, EACH OF WHICH IS WRONG.

The Majority's holding rests on three interrelated propositions: (1) that the common law governs the effect of a sheriff's sale; (2) that a sheriff's sale is essentially equivalent to a foreclosure; and (3) that satisfaction of the judgment is not an "exception" to the sale and therefore cannot prevent ratification. Each of these propositions is contradicted by the cases, the Rules, or both. I address them in turn.

#### A.    *The Common Law Does Not Govern.*

The Majority invokes the common-law principle that title to property sold at a sheriff's sale vests in the purchaser at the moment of the sale. *See Lewis v. Rippons*, 282 Md. 155, 163 (1978). In other words, when the auctioneer's gavel pounds and he intones "sold," the sale is final and cannot be undone unless there is some type of fraud or other recognized irregularity. There are two major problems with this conclusion. *First*, and most importantly, the Maryland Rules abrogated the common law. The *Lewis* case was decided in 1978, six years before the adoption of Maryland Rules 2-644[8] and 3-644 in 1984. As Judge Wilner explained in *Fowler v. Fitzgerald*, under the pre-Rule common

---

[8] Md. Rule 2-644 is the circuit court counterpart to Rule 3-644. The rules contain identical language, and both were adopted in 1984. Md. Rules 2-644 & 3-644. Because this case originated in the District Court, the Majority opinion refers to the rules pertaining to the District Court. Maj. Op. at 4 n. 1. In the interest of consistency, this opinion does the same.

17

law, a sheriff's sale "is final and valid as soon as it is made."  82 Md. App. at 174 (citation and quotation marks omitted).  But "[a]s we shall see, that notion has been changed by the adoption, in 1984, of Md. Rule 2-644[.]"  *Id.*  The intermediate court in *91st Street Joint Venture v. Goldstein*, 114 Md. App. 561, 578 (1997), confirmed: "No such sales are final until ratified."  Thus, the sale is complete upon ratification, not when the auctioneer's gavel pounds.

The Majority's resort to pre-1984 common law is an exercise in anachronism.  This Court adopted Rule 3-644 in 1984 to displace the self-executing sheriff's sale, interposing judicial ratification as a condition precedent to the conveyance of title.  Even in the foreclosure context—where the purchaser's interest is at its strongest—this Court has recognized that ratification is not a formality.  In *Empire Properties,* we held that the purchaser acquires only an inchoate equitable title at the sale, which ripens into complete equitable title only upon ratification, and that legal title does not pass until the purchase price is paid and a deed delivered.  386 Md. at 650.  If ratification carries that weight in foreclosure, it must carry at least as much weight in an execution sale, where the purchaser's interest lacks the structural protections of the foreclosure regime.  The Majority now reads this Court's own Rule to preserve the very regime it was adopted to eliminate— and does so to reach a result the Rule, by its plain language, forecloses.  To argue that common-law finality survives the 1984 Rules is to argue that the Rules changed nothing— a proposition that *Fowler* expressly rejected.

The *second* problem with the Majority's conclusion is that the common law was never as rigid as the Majority makes it out to be.  In *McCartney v. Frost*, this Court set

aside a sheriff's sale where the price was grossly inadequate—and held that the trial court's central error was "in concluding that even though the sale price was grossly inadequate, they were powerless to act." 282 Md. at 640. That is the same error the Majority makes today. The common law gave courts equitable discretion. The Majority claims it is compelled to take the common law's harshness while discarding the common law's safety valve. Both halves of that claim cannot be right.

There is a *third* problem with the Majority's invocation of the common law, one that goes to the Majority's own interpretive methodology. The Majority invokes *Breslin v. Powell*, 421 Md. 266 (2011) for the proposition that rules derogating from the common law must be strictly construed. Maj. Op. at 14. But strict construction means *apply as written*—not apply narrowly so as to restore the common law. The canon requires that derogating rules be given their plain meaning, not that courts construe them to minimize an alleged departure from common-law baselines. Applied correctly, the strict-construction canon supports a result opposite the one reached by the Majority. Rules 3-643(a) and 3-644(d), read as written, produce exactly the outcome described above: property is released from levy when the judgment is satisfied, and no deed is delivered until the court ratifies the sale. The Majority uses the canon as an escape hatch from the text.

Moreover, while reaching for the strict-construction canon of *Breslin*, the Majority ignores that "[t]he Maryland Rules of procedure should . . . be liberally construed so as to effectuate their purposes and to do justice between the parties." *Miller v. Talbott*, 239 Md. 382, 390 (1965); *see also Morton v. Schlotzhauer*, 449 Md. 217, 241 (2016) (same). That directive is not a suggestion. It is a command embedded in our case law—this Court's own

19

instruction about how its own Rules are to be read.  A liberal construction of Rules 3-643(a) and 3-644(d) to secure fairness in administration points unmistakably to the result I would reach: satisfaction before ratification ends the sale.

B.       *A Sheriff's Sale Is Not a Foreclosure.*

In *Goldberg v. Frick Electric Co.*, this Court reaffirmed that a sheriff's sale "arises in a different legal setting" from foreclosure and judicial sales. 363 Md. at 693.  The *Goldberg* court also stated that a sheriff's sale is not a judicial sale, and that the sheriff acts as "the ministerial officer of the law, not as the organ of the court.  He is not its instrument or agent, as in judicial sales, and the court is not the vendor."  *Id.* (internal citations and quotation marks omitted).  And in *Fowler*, Judge Wilner emphasized that "procedural constructs" in the Rules "preserve the traditional differences between sheriffs' sales on the one hand and judicial and foreclosure sales on the other."  82 Md. App. at 175.  The Majority cannot have it both ways.  It cannot cite the common law to establish that title vests at the sale, and simultaneously cite foreclosure doctrine, which this Court's case law has expressly distinguished from a sheriff's sale, to establish that the debtor's only remedy is the exceptions process.  The Majority's conflation of the two is the central analytical error of the opinion.

The difference between these two proceedings is not merely procedural.  It is structural, and it goes all the way down to their core.  The Majority ignores the differences.  Foreclosure in Maryland is a creature of statute.  The Real Property Article, §§ 7-105 *et seq.*, creates the substantive rights: the *in rem* lien, the mortgagee's property interest, the equity of redemption, and the defined period within which that right may be exercised.

20

Title 14 of the Maryland Rules fills the procedural gaps within that statutory framework. Execution sales are categorically different. There is no statute governing the execution sale of real property comparable to the Real Property Article. The source of authority is the writ of execution, which derives from a money judgment—a purely *in personam* obligation. Rules 3-641 through 3-644 govern the entire process and, to the extent they departed from the common law, abrogated it. They do not supplement a statutory framework. They *are* the framework. This matters because the Majority's entire redemption-period analysis depends on importing a statutory concept—the equity of redemption—that has a home in the Real Property Article and no home anywhere in Rules 3-641 through 3-644. The debtor's pre-sale right to pay the judgment and have the levy released, Rule 3-643(a), is not an equity of redemption. It is the ordinary operation of satisfying a money judgment. Calling it a "redemption period," and then declaring that it expired at the auction, is not statutory interpretation. There is no statute to interpret. By treating a sheriff's sale as a mortgage foreclosure, the Majority replaces the plain text of our rules with a judicial analogy that has no foundation in our case law.

The Majority's redemption period analogy fails on its own terms as well—and the clearest way to see it is to return to our marine scientist in coastal Maryland, *supra* at 7, who, like Ms. Carrington, lost his home after paying off his HOA debt post-sale but pre-ratification. Suppose this marine scientist had fallen behind on his mortgage instead of his HOA fees, and the bank foreclosed. The mortgage servicer must mail a notice of intent to foreclose. The notice is a warning and must be sent at least 45 days before a foreclosure action is commenced. The notice of intent to foreclose must also be sent to the Maryland

21

Department of Labor's Office of Financial Regulation, which sends an outreach letter to homeowners who receive such notices. The Order to Docket can be filed no sooner than 120 days after the first missed payment, if the loan is covered by federal law, and must contain a loss mitigation affidavit. The homeowner is given 25 days to request mediation. If mediation fails or is not requested, a foreclosure sale can be scheduled. The sale must be advertised in a newspaper of general circulation once a week for three successive weeks, and the homeowner must be sent written notice of the sale between 10 and 30 days prior. The foreclosure sale is conducted by a court-appointed trustee. *See* Md. Code, Real Prop. § 7-105.1. A sheriff's sale debtor has *none* of these protections.

The difference in outcome for our marine scientist is compelling, and, if we are to follow the Majority's analogy of a sheriff's sale to a foreclosure proceeding, it runs in exactly the wrong direction. The Majority's whole rationale is that a sheriff's sale should be treated like a foreclosure: that is why it imports foreclosure finality, the "post-sale" vocabulary, the redemption-period concept. But a debtor should not have *fewer* rights in the proceeding the Majority says is *like* a foreclosure than he would have in a foreclosure itself. That the Majority's analogy produces precisely this result is proof the analogy is being applied backwards.

The point is not merely that the Majority has misapplied foreclosure doctrine—though it has. If the Majority is genuinely applying foreclosure law, it has misapplied it, because that law would save this homeowner. And if the Majority is applying some rule unique to sheriff's sales that cuts off the debtor's rights at the gavel, it owes Maryland homeowners a legal source to support that principle. There is none. The Majority has

22

invented a redemption period for sheriff's sales and then holds that it expired at a moment created solely by the Majority.

C.    *Satisfaction Is Not an "Exception"—And That Is Precisely the Point.*

There is no rule, no case, and no statute that requires a sheriff's sale to be treated as a foreclosure, and mandates that there is no right of redemption following a sheriff's sale. The Majority certainly cites to none.  Instead, the Majority imports both of those concepts wholesale from the foreclosure context, where they belong, and grafts them onto a proceeding that is categorically different.  Neither the text of Rule 14-305 nor any case decided under it supports that transplantation.  As our marine scientist hypothetical exposes, the foreclosure context cannot, and should not, be superimposed on a sheriff's sale.  It does not fit.

The Majority's argument from Rule 14-305 runs as follows: because the only post-sale challenge mechanism for a sheriff's sale is the "exceptions" process of Rule 14-305(e)(1)—which, according to the Majority, is limited to irregularities with the sale itself, *see Bates v. Cohn*, 417 Md. 309, 320 (2010); *Thomas v. Nadel*, 427 Md. 441, 444 (2012)—and because satisfaction of the judgment is not such an irregularity, the debtor has no post-sale remedy at all.  But both *Bates* and *Thomas* are foreclosure cases.  The Majority cites foreclosure authority to define the scope of exceptions in a proceeding that is indisputably not a foreclosure.  That is the core error, and it produces the Majority's central non sequitur.

The Majority is technically correct that satisfaction of the judgment is not an "exception" under Rule 14-305(e)(1).  Rule 14-305(e) says nothing about the effect of satisfying the underlying judgment—an event that operates entirely outside the exceptions

23

framework,[9] under Rule 3-643(a), which independently and mandatorily releases property from levy when the judgment is satisfied.[10] Rule 3-644(d) incorporates Rule 14-305 for the mechanics of ratification—notice, publication, the timeline for exceptions, the standard for court approval. It does not nullify Rule 3-643(a). These two provisions operate on different planes of the remedial scheme, and the Majority's conflation of them is not an interpretation of Rule 14-305. It is an importation of foreclosure finality doctrine into a proceeding the Rule does not govern in such a manner. The distinction matters because the foreclosure context, where Rule 14-305 originated and where *Bates* and *Thomas* were decided, has its own framework.

But there is no protective statutory scheme attendant to a sheriff's levy sale or a designated period of redemption. There is no statute providing one, no Rule creating one,

---

[9] The Majority and Concurrence note that Ms. Carrington did not file exceptions to the sheriff's sale. Majority Op. at 24; Fader, C.J., concurring at 2. But neither explains why she would. She paid the judgment within thirty days of the sheriff's sale, and the District Court below ruled in her favor and closed the case—within 60 days of clerk's issuance of the notice of proposed ratification. A prevailing party does not file exceptions to a sale that is being vacated. And to the extent there was delay in these proceedings, the Majority correctly recognizes that the blame does not belong to Ms. Carrington. As the Majority itself recounts, the sheriff filed the Report of Sale three months late, the clerk failed to issue the required notice for more than nine months, and Baltimore XV did not seek prompt ratification after the sale. Maj. Op. at 23-25. Every actor responsible for the delay in this case was someone other than Ms. Carrington. She did the one thing within her power: she paid the judgment.

[10] The Majority's narrow construction of "irregularity" is also ahistorical. When Rules 2-644 and 3-644 were adopted in 1984, they made sheriff's sales subject to former Rule BR6, which permitted substantive challenges to ratification—not merely procedural ones. Rule 14-305, adopted in 1996, replaced BR6. Nothing in the text or drafting history of Rule 14-305 suggests the Rules Committee intended to narrow the scope of permissible exceptions from substantive to purely procedural. Justice Watts' dissent traces this history in detail. *See* Watts, J., dissenting, at 6-9. I join her analysis on that point.

24

and no case holding that one exists. The Majority does not identify any such authority, because there is none. What the Majority has done, in effect, is conjure up a redemption deadline—the moment the gavel falls—for which no statutory or rule-based source exists and then rely on the absence of a right of redemption as the reason why the debtor cannot challenge the sale. That is circular. There is no post-sale right of redemption in this context not because the law forecloses it, but because the law never created a "redemption" framework for sheriff's sales in the first place.

Satisfaction need not fit the exceptions framework, because it operates at a different level of the remedial scheme entirely: not as a challenge to the conduct of the sale, but as the extinguishment of the money judgment that authorized the sale in the first place. A legal framework that forbids a creditor from accepting satisfaction of its own money judgment—and forbids a court from recognizing that an *in personam* obligation has been discharged—is not a framework any rule of procedure prescribes, and no precedent compels it. A rule that bars a creditor from being paid what it is owed is not procedure. It is a prohibition on satisfaction itself.

The Majority's reliance on the "inchoate equitable interest" framework from *Empire Properties* is built on a false foundation. The framework rests on a structural premise that is true in foreclosure and false in a sheriff's sale: that the court is the vendor. In a foreclosure, the trustee is the court's agent. Ratification completes a judicial conveyance. The purchaser's interest is protected, because it arises from the court's own act and an underlying *in rem* lien that survives independently of the borrower's payment.

25

None of these features exists in a sheriff's sale. The court is not the vendor. *Goldberg*, 363 Md. at 692–93. The sheriff is not the court's agent. *McCartney*, 282 Md. at 635-36. There is no *in rem* lien that persists independently of payment of the debt. When the judgment is satisfied, there is no lien, no writ, and no authority for the sale. The inchoate equitable interest in this context is therefore categorically different from the interest described in *Empire Properties*: it is contingent not merely on ratification, but on the continued existence of the judgment and the lien that gave rise to the writ. With a sheriff's sale, extinguish the judgment, extinguish the inchoate interest. After all, it would be odd to have the sheriff sell a debtor's home to satisfy a debt if there is no debt. The Majority's layered foreclosure analysis—inchoate interests, common-law finality, and the rest—obscures a result that even a pro se litigant undergoing chemotherapy could see was unjust, unsupported by the text, and structurally unworkable. Ms. Carrington told the circuit court: "[T]he thought of losing my house for $6,000 and I'm still paying a mortgage is insane."

The Majority's error is multi-layered. Its analysis proceeds by a series of inferential steps, each borrowing a premise from foreclosure law, transplanting it into the sheriff's sale context, and then treating the transplanted premise as established for purposes of the next step. The purchaser acquires an inchoate equitable interest (a foreclosure concept). That interest survives satisfaction of the judgment (a conclusion that follows only if foreclosure finality applies). Satisfaction is therefore not a ground to deny ratification (a result that follows only if the preceding steps are correct). At each stage, the Majority treats its own prior self-created inference as a settled premise, until the conclusion appears

26

inevitable. But inevitability is not the same as correctness. Remove the first step—importing foreclosure doctrine into a proceeding that our case law has repeatedly said is not a foreclosure—and the entire structure collapses

There is one additional point that deserves explicit attention. The Majority's argument rests in part on protecting the integrity of competitive bidding at sheriff's sales, suggesting that allowing a debtor to clear a debt post-auction would chill third-party bidders at auction sales. Maj. Op. at 20–21. This argument rests on a flawed premise. Any bidder sophisticated enough to appear at a sheriff's auction knows—or should know—that our rules explicitly subject the process to judicial ratification and allow for the release of property upon satisfaction of the underlying debt. *See* Rules 3-643(a), 3-644(d). Baltimore XV, a professional real estate investor, undoubtedly knew the conditional nature of its bid.

The Majority's "chilling effect" argument is also entirely counterfactual on this record. The winning bid of $6,000 represented a mere 1.3% of the property's assessed value. A process that routinely produces such a staggering disparity does not need its windfall protected; it needs the exact judicial oversight that the ratification process was designed to provide.

**IV.  HOW A SHERIFF'S SALE WORKS—AND HOW LITTLE STANDS IN THE WAY**.

Because the Majority treats the sheriff's sale as a *fait accompli*, it is worth understanding how little it takes to set this process in motion—and how few protections a homeowner has along the way. The ease with which a judgment creditor can force the sale of a family's home cannot be overstated.

27

Any creditor holding any money judgment may initiate the process. There is no minimum dollar threshold. A creditor owed $500 technically has the same power to force the sale of a $500,000 home as a creditor owed $500,000. No judicial approval is required. The creditor fills out a one-page preprinted form—a Request for Writ of Execution. *See* Md. Rule 3-641. The clerk issues the writ without judicial review. The creditor pays the sheriff a service fee—$40 in this case. The sheriff goes to the property and posts a piece of paper. That is the levy. *See* Md. Rule 3-642(a). There is no requirement that the creditor first attempt to collect from wages, bank accounts, or personal property before seizing the home. There is no requirement that the mortgage lender be notified.

The debtor then has 30 days to claim an exemption under Rule 3-643(d)—assuming she knows about the levy, understands its legal significance, and can afford a lawyer. If no exemption is claimed or the exemption is insufficient, the sheriff schedules the sale. Notice is posted on the courthouse door and published in a newspaper at least ten days before the sale. *See* Md. Rule 3-644(b). The sheriff conducts the auction and sells to the highest bidder. There is no minimum bid. There is no requirement that the sale price bear any relationship to the property's fair market value. The entire process—from form to auction—requires no more judicial involvement than the issuance of a traffic citation.

The homeowner, here, fell prey to many of these factors. Ms. Carrington— undergoing chemotherapy, making sporadic payments, trying to resolve the debt— appeared *pro se* at the circuit court hearing with a memorandum her neighbor helped her prepare. She had no lawyer. She did not know she was required to e-file documents. She did not know the legal significance of what was happening to her until it had already

28

happened. This is not an unusual case. It is the paradigm—and the Majority's holding ensures that it will be repeated, again and again, across the State unless the General Assembly acts. *See infra* at Section VIII.

Little can stop this process from starting. As noted, the Rules permit any judgment creditor to file a form, pay $40, and set the machinery in motion. But the inability to prevent the petition from being filed is not a reason for a court to act as though it is equally powerless to prevent an injustice from occurring. The ratification requirement exists for this very purpose. It is the moment at which a court of law is also a court of equity—the moment at which a judge looks at what the machinery has produced and asks whether equity and good conscience permit it to go forward. Maryland Rule 14-305(f) mandates that before ratifying a sale, a court must be satisfied that the sale was fairly and properly made. To treat ratification of a sheriff's sale as a purely ministerial formality, restricted solely to the mechanics of the auction itself, especially under the facts of this case, is to ignore the mandate of Maryland Rule 14-305(f).

## V.     THE MAJORITY'S RULE CREATES A CASCADE OF ADVERSE CONSEQUENCES.

My colleagues in the Majority may take comfort in the observation that a sheriff's sale purchaser takes the property "subject to" existing senior encumbrances, including any prior mortgage. Maj. Op. at 3. However, the phrase "subject to" masks a thicket of legal and practical consequences that the Majority does not examine and that will cause structural harm across the State. I catalogue them here because a new rule cannot be properly assessed without confronting the exact realities it will produce.

29

Each of the consequences I describe below is, standing alone, a feature of any sheriff's sale that proceeds to ratification. That is precisely the point. Before today, a judgment debtor who satisfied the judgment before ratification could prevent the sale from reaching ratification—and could thereby avoid every one of these consequences. Under today's holding, even a debtor who pays every cent she owes cannot stop the cascade.

*First*, the purchaser realizes an unearned windfall directly derived from the ejectment of the homeowner from the property. In this case, Ms. Carrington bought this home in 2001 for $192,000. The State now assesses it at $458,600. Baltimore XV bid $6,000. Since the August 29, 2023, sale, Ms. Carrington has continued to pay her mortgage and maintain the property, including throughout this litigation. The Majority acknowledges the inherent disparity of this outcome, noting that "Baltimore XV may acquire the Property subject to a mortgage with a lower principal balance than would have been the case if ratification had occurred sooner." Maj. Op. at 23. That is a delicate way of describing an inequitable transfer of wealth. The point is that every mortgage payment Ms. Carrington has made since the August 29, 2023, sheriff's sale has reduced the balance and increased the equity—equity that, under the Majority's rule, now belongs to Baltimore XV. Ms. Carrington has, thus, been building wealth for the very entity that will take her home.[11]

_____

[11] The Majority's disposition compounds the inequity in this case. Rather than hold what the record plainly shows—that a $6,000 bid for a home the State assesses at $458,600 cannot stand—the Majority remands for Ms. Carrington to litigate that question yet again, prolonging an ordeal that is already years old. While the case proceeds, Ms. Carrington must keep paying her mortgage: if she stops, the lender forecloses and she loses the home

*Second*, taking property "subject to" a mortgage is fundamentally distinct from assuming the underlying debt. A sheriff's sale purchaser acquires property encumbered by the mortgage lien but incurs zero personal liability on the mortgage note; that personal obligation remains exclusively with the displaced homeowner. Consequently, the purchaser is under no obligation to maintain mortgage payments. A speculator can exploit the property by renting it out and pocketing the income—essentially milking the equity— while ignoring the underlying debt. Once the mortgage inevitably defaults and the lender forecloses, the original homeowner is left entirely exposed to a massive deficiency judgment inflated by default interest and fees, all on a home they no longer own.

*Third*, in virtually every case, the involuntary transfer of title at a sheriff's sale triggers the standard due-on-sale clause contained in residential deeds of trust. *See Meese v. Meese*, 212 Md. App. 359, 363 n.2 (2013) (noting that a due-on-sale clause allows a mortgage holder to accelerate the loan upon transfer). This forced destabilization of a performing mortgage is triggered not by any default on the mortgage note itself, but by the execution of a minor judgment that has already been paid. If the lender accelerates the loan, the homeowner faces an immediate foreclosure and personal liability for the deficiency, while the purchaser walks away unscathed.

---

at once; if she continues, every payment reduces the mortgage balance and builds equity that passes to Baltimore XV should the sale be ratified. She thus chooses between losing the home now and financing its loss later. Baltimore XV faces no such choice. It bid $6,000 and loses nothing—if the sale is set aside, the sheriff returns its money, and it is made whole. Until then it need do nothing: it has paid no mortgage, no taxes, no upkeep, no HOA fees, and its position only improves as Ms. Carrington pays down the loan and maintains the property.

31

*Fourth*, a sheriff's sale passes title free and clear of encumbrances junior to the judgment lien, risking the arbitrary destruction of subordinate interests. *See E. Shore Bldg. & Loan Corp. v. Bank of Somerset*, 253 Md. 525, 529–30 (1969). A home equity line, a second mortgage, or a subordinate lien may be completely extinguished—destroying the security interest of a junior lienholder who was never a party to the underlying dispute. Until today, a debtor who paid a judgment could prevent this collateral damage. The Majority has foreclosed that opportunity.

The cascade of adverse consequences does not stop there. The chain of title is thrown into disarray; title insurance companies routinely refuse to insure title derived from execution sales; property insurance policies lapse while personal liability remains; and Maryland imposes no minimum-price safeguard.

The Majority treats an execution sale as a self-contained, discrete transaction—the gavel falls, the purchaser wins, and the debtor loses. But a sheriff's sale of a primary residence does not occur in a vacuum. It sends profound shockwaves through a complex network of legal, financial, and contractual relationships. By denying the existence of an escape valve when the debt is fully satisfied prior to ratification, the outcome of the Majority's decision will lead to windfalls for third-party buyers over the preservation of homeownership and the orderly collection of debts.

## VI.    EQUITY AND PROPORTIONALITY DEMAND VACATUR.

Even if the Rules were ambiguous—and I do not believe they are—equity would compel the result I would reach. The underlying judgment was $3,289 in unpaid HOA assessments that arose while Ms. Carrington was undergoing cancer treatment. The

32

property is her home in Bowie, Maryland, where the median home value is approximately $459,300. *See Bowie, MD: Census Place*, DATAUSA.IO (June 9, 2024), https://datausa.io/profile/geo/bowie-md [https://perma.cc/H4DU-863T]. Ms. Carrington was actively paying her mortgage, and nothing in the record indicates that she is not current on it. Baltimore XV bid $6,000. Ms. Carrington satisfied the judgment in full before ratification. The HOA itself filed to vacate the sale. The District Court ruled in Ms. Carrington's favor. The circuit court affirmed. No one involved in this case, except Baltimore XV—not the creditor, not the debtor, not either lower court—sought the result the Majority now imposes. Only the real estate investor demands the windfall of a $450,000 house for $6,000.[12]

A delinquent taxpayer who owes the State of Maryland money has a statutory right of redemption—the right to pay what is owed and reclaim the property. *See* Md. Code, Tax-Prop. § 14-833 et seq. A homeowner who owes her HOA $3,289 in assessments—and who has paid—has, after today, no such right. The anomaly is striking. Maryland law now affords more protection to people who fail to pay their taxes to their state government than to people who pay their judgments.

---

[12] In his concurrence, Chief Justice Fader observes that Baltimore XV did not purchase Ms. Carrington's house for $6,000, but rather her interest in the house, and that the record contains no information about the value of that interest. Fader, C.J., concurring at 1–2. The distinction is one without a difference on this record, and the concurrence never explains the difference it implies. Whether Baltimore XV acquired "the house" or "the interest in the house," it acquired her interest in a home assessed at $458,600—a home owned by Ms. Carrington for twenty-five years, and on which she continues to pay the mortgage. The Concurrence fails to explain how acquiring her interest for $6,000 differs in any meaningful way from acquiring her house.

### VII. THE MAJORITY'S RULE WILL FALL HARDEST ON MINORITY HOMEOWNERS.

Forced property sales—whether through tax liens, HOA judgments, or writs of execution—disproportionately affect Black and Latino homeowners, and the benefits flow overwhelmingly to investors who typically have no ties to the affected communities. A substantial and growing body of scholarship documents this dynamic.

This case arises from Bowie, Maryland, in Prince George's County—where nearly 60% of the County's residents are Black. *Black Population, 2024 – Maryland*, RURAL HEALTH INFORMATION HUB, https://www.ruralhealthinfo.org/charts/22?state=MD [https://perma.cc/PQ89-3FE9] (last visited June 24, 2026). In Bowie, approximately 53.4% of residents are Black or African American; as of 2024, the homeownership rate is 83.9%; and the median property value is approximately $459,300. *Bowie, MD: Census Place*, DATAUSA.IO (June 9, 2024), https://datausa.io/profile/geo/bowie-md [https://perma.cc/H4DU-863T]. The home at issue is situated in precisely the kind of community where Black families have built intergenerational wealth through homeownership—a path that was purposefully foreclosed to for decades via redlining, racially restrictive covenants, and discriminatory lending. *See generally* Richard Rothstein, *The Color of Law* (2017); Thomas W. Mitchell, *From Reconstruction to Deconstruction*, 95 Nw. U. L. Rev. 505 (2001).

For most people, homeownership is the primary way to build wealth and is their greatest asset. A substantial body of scholarship documents this principle. *See, e.g.*, Joseph Dean, *The Racial Wealth Divide and Black Homeownership: New Data Show Small Gains,*

34

*Deep Fragility*, NATIONAL COMMUNITY REINVESTMENT COALITION (Feb. 28, 2024) https://ncrc.org/the-racial-wealth-divide-and-black-homeownership-new-data-show-small-gains-deep-fragility/) [https://perma.cc/MHW5-CFDS]; Junia Howell and Elizabeth Korver-Glenn, *Race determines home values more today than it did in 1980*, RICE UNIVERSITY: KINDER INSTITUTE FOR URBAN RESEARCH (Sep. 24, 2020) https://kinder.rice.edu/urbanedge/race-determines-home-values-more-today-it-did-1980 [https://perma.cc/Z97Q-NGTC].

This Court should not avert its eyes from the disproportionate impact this decision will have on Black and Brown families in Maryland. The Majority adopts a reading of the law that the judges of two courts rejected, and which will foster a foreseeable disparate impact in a community in which that impact will be felt most acutely.

## VIII. THE MAJORITY HAS MADE ITS DECISION. THE GENERAL ASSEMBLY MUST NOW ACT.

The Majority's decision will lead to a great many more people losing their homes because of debt. I am not speaking in abstractions.[13] I am speaking of people like Wendy

___

[13] In fact, recently this Term, a petition for writ of certiorari was filed by another homeowner in Prince George's County involving the same purchaser, Baltimore XV Properties, LLC. *See Douglas v. Highbridge Community Association, Inc.*, No. 486, September Term, 2025 (*cert. denied*). In that case, the petition alleged that the HOA obtained a small claim judgment in the principal amount of $912 against a property owner who alleges he was never served and had no knowledge of the proceedings until his home was sold. Allegedly, the HOA knew the owner did not reside at the service address. The process server's own notes reflected that he doubted the veracity of the person he encountered. Nevertheless, the HOA obtained an affidavit judgment and proceeded to a sheriff's sale. Baltimore XV was the high bidder — at $2,150, for a property with a tax-assessed value of $479,200. The owner, who continues to pay his mortgage, learned he had lost his property when a stranger appeared and informed his tenant that the home had been sold.

Carrington—people who lose their jobs, or are furloughed, or face unexpected medical bills—people who fall behind on an HOA assessment or a consumer debt, who face a default judgment, and who then discover that their home has been sold at a sheriff's sale for a fraction of its value. Under today's decision, even if they scrape together the money to pay the judgment in full, it will not matter. Their home is gone. And their mortgage lender may accelerate their loan. And their junior liens may be wiped out. And their credit may be further destroyed by a deficiency on a mortgage they can no longer service on a home they no longer own.

I am hopeful that the General Assembly will act. Maryland's current statutory scheme provides robust redemption rights for tax sales. *See* Md. Code, Tax-Prop. § 14-833 *et seq*. It provides protections for borrowers in foreclosure. *See* Md. Code, Real Prop. § 7-105.1. But under the Majority's view, if a homeowner's property is seized and sold under a writ of execution to satisfy a money judgment—for any amount, no matter how small—the law provides no real recourse. No right of redemption. No minimum debt threshold. No requirement that the sale price bear any relationship to the property's fair market value. No protection against due-on-sale acceleration of the homeowner's mortgage.

Should the General Assembly enact legislation to protect homeowners from sheriff's sales of real property, the simplest solution is to abolish them. If a judgment creditor seeks to execute against a debtor's real property, require that the execution proceed through the foreclosure process—with its numerous presale protections, its trustee, its fiduciary obligations, its surplus distribution mechanism, and its judicial oversight. There

36

is no reason that a $3,289 HOA judgment should command a more summary, less protective process for seizing a family's home than a mortgage default. Short of abolition, the General Assembly should consider adopting protections so robust that they effectively prevent the kind of result the Majority reaches here, including: (1) a statutory right of redemption for judgment debtors whose real property is sold at a sheriff's sale, permitting the debtor to reclaim the property by satisfying the judgment and all costs within a defined period after the sale; (2) a minimum debt threshold below which real property may not be levied upon and sold; (3) a requirement that the court, before ratifying a sheriff's sale, consider whether the sale price is grossly inadequate in relation to the property's fair market value; (4) a requirement that mortgage lenders and junior lienholders receive meaningful notice and an opportunity to protect their interests before the sale is ratified; (5) a requirement that no judgment creditor may initiate a sheriff's sale of real property without prior judicial authorization, upon a showing that the creditor has exhausted other collection remedies and that execution against the home is necessary and proportionate to the debt; and (6) an update to the homestead exemption under Md. Code, Cts. & Jud. Proc. § 11-504(b), which currently stands at $25,150—a figure that is now a relic, protecting a trivial fraction of the average Maryland homeowner's equity.

## IX.    CONCLUSION

For the reasons stated herein, I would affirm the judgment of the circuit court. The underlying judgment was satisfied before ratification. After satisfaction of the judgment, the levy and sale lost any legal basis. Any inchoate interest held by the purchaser was

extinguished. Treating the sale as effective despite satisfaction reinstates a self-executing

sheriff's sale in contravention of the Maryland Rules.

In reversing the circuit court, the Majority remands the case to the District Court

and instructs that Ms. Carrington be permitted to file exceptions. Maj. Op. at 24. The

Majority does not directly address Rule 14-305(f) in its remand instruction, which

independently requires the court to find, before ratifying, that the sale was "fairly and

properly made." The Rule 14-305(f) obligation is not discretionary, and the Majority has

not purported to eliminate it. *See* Maj. Op. at 7-8. If the court is not satisfied that the sale

was "fairly and properly made," it "may enter any order that it deems appropriate." Rule

14-305(f).[14] The Majority's holding tells the District Court that it cannot deny ratification

because the judgment was satisfied. It does not tell the District Court it must ratify a sale

that was not fairly and properly made. Those are different questions, and the Majority has

answered only the first.

On remand, the District Court retains the authority—and the obligation—to examine

whether this sale meets the standard Rule 14-305(f) demands. In doing so, the District

Court should consider the following:

---

[14] The Concurrence notes that "the fate of the sale is far from settled." Fader, C.J.,
concurring at 2. In so observing, he concedes three things that the District Court should
consider on remand. *First*, an unconscionable price is a valid basis to set aside the sheriff's
sale—and $6,000 for a home worth hundreds of thousands of dollars "should be set aside
for unconscionability" with "no hesitation." *Id*. *Second*, if the sale is set aside, "there will
be no basis to conduct another sale" because the debt is paid. *Id*. at 3. And *third*, the post-
sale proceedings were "quite unusual and troubling" and, in his view, "would seem to
render this case an outlier." *Id*.

*First*, the District Court should examine how the sale was publicized. Rule 14-305(a) requires a report of sale; the predicate notice requirements govern advance publication. But legal sufficiency and practical effectiveness are not the same thing.

*Second*, the District Court should inquire how Baltimore XV learned of this sale. Baltimore XV is a professional real estate investor that has purchased at least one other property in Prince George's County through this same mechanism at auction for $2,150 against a judgment of $912. *See supra* at 37, n. 15. Resolution of this question may shed light on whether the sale was fairly and properly made.

*Third*, the District Court should consider whether there was competitive bidding for Ms. Carrington's home. A competing bidding process is itself a circumstance bearing on the Rule 14-305(f) inquiry. Under *McCartney*, "slight circumstances of unfairness in addition to great inadequateness of price" can justify setting aside a sale. 282 Md. at 639. The Majority has noted that "society has an interest in encouraging prospective purchasers to bid at sheriff's sales." Maj. Op. at 21. An auction that produced a $6,000 offer for Ms. Carrington's homer is direct evidence that the process failed to serve that interest. It is at minimum a circumstance the District Court should examine.

*Fourth*, and perhaps most importantly, the District Court should consider whether "the sale price is so insufficient that the sale should be overturned" as an "irregularity." Maj. Op. at 20. While I believe that conclusion is self-evident on this record, the District Court is entirely free to reach its own independent conclusion on remand based on the evidence presented at the exceptions hearing.

Justice Watts and Justice Eaves authorize me to state that they join in this dissent.